Ruffin, O. J.
 

 The rights of the parties depend upon the question, whether the gift of the negroes was contingent. If the will gives a vested interest, then each of the four childrc n was entitled to a share, and the shares of those dying before Kinchen came of age, were transmissible to their representatives. It is insisted, that this was a contingent gift, chiefly on the strength of the word
 
 when ;
 
 which, it is said, as the clause is framed, refers to the gift, and not to the division of the negroes. It is no doubt the law, in respect to gifts of personal estate by will, that the word
 
 “when,”
 
 like “at” or
 
 “if,”
 
 is a word of condition, and imports, that the time “when” the legatee is to receive the bounty, is of the essence of the donation,
 
 Giles
 
 v.
 
 Franks, 2
 
 Dev. Eq. 541, unless there be some other expression to explain it, or some provision in the context to control it. It is well settled, for example, that, if there be a gift of a sum of money “to be paid” to “A,” oí a particular ppriod, or
 
 when
 
 B. shall come of age, the words “ to be paid,” control the expressions of contingency, by shewing that they were not used in that sense, but only to mark the period, at
 
 *327
 
 which the enjoyment would begin. The same effect, it would seem, must be allowed to the words of this will, “ equally to be divided between them,” provided
 
 when
 
 is to be referred to these latter words, as denoting the time merely, at which the testator intended each child to have his or her share in severalty, and not
 
 to the
 
 words, “I give and bequeath,” in the previous part of the sentence, so as to denote an intention, that the gift itself was made only
 
 when
 
 the son should come of age. We do not perceive a distinction, to this purpose, between “equally to be divided,” and “tobe be paid” or “payable.” But upon the clause of this will, by itself, it is really not easy to say, to which the testator meant to refer the time, the gift, or the division. The sentence is not only ungrammatical, but is inaccurately and clumsily expressed. The ambiguity arises from the position in the sentence of the subject of the gift, “my negroes”; and it seems impossible to speak with any certainty as to the intention on this point, looking only at the words here used. But there is a leaning always in the court, towards vesting, if the expressions be ambiguous, and the intention doubtful.
 
 Stuart
 
 v. Bruer, 6 Ves. 529.
 
 Sitwell
 
 v. Bernard, 6 Ves. 522.
 

 There are also other provisions in the will, and other considerations, which strike us as fortifying the construction, that these are vested interests. In the first place, there is an apparent intention to put all four of these children upon an equality in respect of the negroes. They are to be equally divided between them. Now, it seems difficult to suppose, that the testator meant the legacy of Mrs. Guyther to fail by her death, and, indeed, that he did not mean the contrary, as she was then married and had at least one son, to whom his grandfather gives a negro. If the words were clear, it is true that circumstance could not control them; but, upon an ambiguous sentence, it is quite material to aid in fixing upon the one intention or the other. With respect to his unmarried children, he might not have adverted to the probability of their marriage, having issue, and dying before Kinchen came of age. But he could have hardly overlooked the probability of Mrs.
 
 *328
 
 Guyther’s death, before that event, and leaving a child or or have intended, in case she should, that her family should be altogether unprovided for. But when it is observ- ° r ed, that the gift of the negroes is not to the four children jointly, nor
 
 by
 
 a general description, under which such of them, as should be living when Kinchen came of age, would be entitled to take the whole, but is to the four,
 
 nominatim,
 
 equally to be divided between them, so that, in no event, could any one of them receive more than a share, viz: one fourth, under that clause,
 
 (Johnson
 
 v.
 
 Johnson,
 
 decided at this term) the reasons for holding the legacies to be vested, become much
 
 stronger. For the effect of holding otherwise, would
 
 be to entitle Kinchen, by virtue of the gift of the residue, to the shares of those thus dying; which would be in opposition to the apparent equality intended between him and his sisters, at least as to this fund. But that is not all. The construction would produce this absurdity: that, if Kinchen should die while an infant, then his own share of the negroes, which, upon the argument for him, the testator intended should be contingent, and not belong to him unless he lived to be 21, would nevertheless fall into the residue, and, as to that no contingency is annexed, would in that form be a vested interest. That would render the gift of Kinehen’s fourth part of the negroes, at one and the same time, by one clause in the- will contingent, and by another clause, vested j which cannot be supposed. He clearly has a vested interest by virtue of the gift of the residue, and, therefore, it must be taken — to avoid the absurdity pointed out — that the testator intended, that he should have a vested interest by the clause giving the negroes specifically; and if, by that, he acquired such an interest, then the others must, by the same clause, have a vested interest also; for, in that part of his will, the testator puts the four on the same footing precisely. To those considerations, arising out of the particular provisions of the will, is to be added another important one; which is, that the testator disposes of his negroes until the period at which they are to be divided, and, consequently, the whole subject,
 
 corpus,
 
 is given away for different purposes;
 
 *329
 
 so that the interests given to the children are in the nature of remainders, and the term “when,” though generally a word condition, marks in this case only the commencement of the remainder. The cases upon the subject are collected and well explained by Mr. Roper in his Treatise on the law of Legacies, 1 vol. 392. Here, besides maintaining the children, the sum off1000 was to be raised for Joshua Taylor; and, that the testator judged rightly, that it would require at least the whole period to raise that sum out of the profits of the estate, is proved by the event. It is not yet all raised; and we may therefore fairly presume, that the solo purpose, in not directing an immediate division of the negroes among the four donees, was, by keeping them together, to raise the pecuniary legacy to Joshua, after maintainance to the children; and, if so, the rule is to consider the gift to be immediate, though, being in the nature of a remainder, it is not to be enjoyed until a particular period; by which time the testator expected the purpose he had in view would be effected. Upon the whole, therefore, we are of opinion, that we shall best effectuate the testator’s intention, though very obscurely expressed, by holding these to be vested interests, and, consequently that each of the children, or their respective administrators, is entitled to one fourth part. The decree must be, therefore, that the balance due to Joshua Taylor for his legacy, and the expenses of the estate, including the costs of this suit, be raised out of the negroes, and those that may remain, be divided as here directed.
 

 Pee Curiam, Decreed accordingly.