A. DEWEY CARTER, E. HAINES GREGG AND GEORGE E. DOMBHART, AS TRUSTEES UNDER THE WILL OF A. B. CARTER, DECEASED; A. B. CARTER, INC.; DEWEY CARTER, INDIVIDUALLY, AND WIFE, JEAN MURRAY CARTER; RUBY CARTER GREGG AND HUSBAND, E. HAINES GREGG, INDIVIDUALLY; AND MAE COGGINS CARTER v. MADGE CARTER KEMPTON AND HUSBAND, E. S. KEMPTON; MARGARET K. KELLY AND HUSBAND, ROY W. KELLY; MARGARET ANN KELLY AND ROY WILLIAM KELLY, JR.; MADGE KEMPTON; J. BYNUM CARTER; TULA C. ROBBINS AND HUSBAND, WILBUR G. ROBBINS; WILBUR G. ROBBINS, JR.; PATRICIA ANNE GREGG, JEANNE ELLEN GREGG; THE UNBORN ISSUE OF A. DEWEY CARTER, RUBY CARTER GREGG AND MADGE CARTER KEMPTON; AND ALL OTHER PERSONS WHO HAVE OR MIGHT HAVE ANY RIGHT, TITLE, OR INTEREST WHATSOEVER IN THE PROPERTY INVOLVED IN THIS SUIT WHETHER IN ESSE OR NOT IN ESSE.

(Filed 13 December, 1950.)

1. **Executors and Administrators § 24—**

   While family settlements, when fairly made, are favorites of the law, this rule is subject to material limitations when a testamentary trust is involved.

2. **Same—**

   Where a family agreement involves the rights of infants, the rule that the law looks with favor upon such agreements will not prevail over the precept that equity will be guided by the welfare of infants in determining the reasonableness and validity of the agreement.

3. **Trusts § 27—**

   The power of courts of equity to modify a trust created by will is exercised to preserve the trust estate and effectuate the intent of testator by

making modifications in accordance with the spirit of the instrument to provide for exigencies relating to and growing out of the trust itself which were not foreseen by testator and which make action by the courts indispensable to the preservation of the trust and the protection of the infant beneficiaries. Modification will not be made at the will of the beneficiaries or for their welfare or merely because they find the terms of the trust objectionable.

**4. Wills § 33c—**

Where the beneficiaries of an active trust are given all or part of the income pending final division, or the language of the instrument discloses a clear intent that the beneficial interest should vest upon death of testator, the interest of the beneficiaries is vested, with full enjoyment merely postponed until the termination of the trust.

**5. Same—**

Where there is no gift of the estate or of the income therefrom during the life of the trust, provision for equal distribution among the beneficiaries at the termination of the stated period of the trust is of the essence of the donation and constitutes a condition precedent, so that the *corpus* of the trust does not vest until that time, and the distributees take a transmissible interest contingent upon their capacity to answer at the time the roll is called.

**6. Same: Trusts § 11—Under terms of this trust, corpus does not vest until the termination of the trust.**

The will in suit set up a trust estate with provision that the *corpus* be divided among testator's children and their heirs at the expiration of twenty years. There was no provision for the payment of the income from the estate other than payment of a small sum per month to one beneficiary not made a distributee of the *corpus* of the estate, and provision giving the trustees discretionary authority to alleviate any emergency in the affairs of testator's children or the issue of a deceased child, and provision that if the interest of any beneficiary should be forfeited under provisions of the instrument, such interest should go to the other beneficiaries. *Held:* The *corpus* of the estate does not vest until the termination of the trust, and the minor children of the named distributees have a contingent interest therein sufficient to invoke the protective jurisdiction of a court of equity.

**7. Trusts §§ 11, 14a—**

A devise to trustees to receive, dispose of, and lease the property as though they were absolute owners thereof vests the title to the property in the trustees subject to their duty to account for same, but conveys no beneficial interest to the trustees.

**8. Executors and Administrators § 24: Trusts § 27—Equity cannot modify trust merely to avoid controversy between trustees and beneficiary.**

Under the testamentary trust in suit the beneficiaries, including minor children, took a contingent interest. There was no provision for payment of income to the ultimate distributees except upon emergency. One of the named distributees instituted an action against the trustees alleging

*mala fides* and maladministration, and praying a construction of the trust as to the compensation the trustees were entitled to pay themselves from the estate. In order to end the litigation, the parties entered into an agreement that a proportionate part of the estate be set aside for the benefit of the objecting distributee and placed under the control of another trustee and the income therefrom be paid to her yearly. *Held:* A court of equity has no authority to modify the trust by approving the family agreement.

**9. Same—**

Injury resulting from controversy between the trustees and the beneficiaries of a trust only incidentally affects the trust, and is not such an exigency as will justify a court of equity in modifying its provisions.

APPEAL by defendant S. B. Dolley, guardian *ad litem,* from *Patton, Special Judge,* October Extra Term, 1950, MECKLENBURG.

Petition for approval of a family settlement of differences respecting the administration of a trust estate.

A. B. Carter died testate 15 September 1939, possessed of some real estate and personal property composed almost entirely of the stock of A. B. Carter, Inc. He owned all the stock of that corporation.

He devised all his property, real and personal, to A. Dewey Carter, a son, E. Haines Gregg, a son-in-law, and George E. Dombhart, a trusted employee, in trust. After vesting the trustees with full power to hold, manage, control, and dispose of the trust property "as though they were absolute owners thereof" and to receive, collect, invest, reinvest rents, dividends, and profits of the estate, as well as the *corpus,* in their discretion. The will further provides: "I desire that they (the trustees) have and exercise full and independent discretion in connection with all matters relating to said estate."

Other than as thus provided, there are only two provisions for the use of the income of the estate during the existence of the trust, except for the payment of expenses and compensation to the trustees, which are as follows:

(1) The trustees are directed to pay to Mae Coggins Carter $140 per month during the 20-year period of the trust unless she shall die prior thereto; and in addition she is to have the right to occupy the residence in Greenville, S. C., until and unless it is sold by the trustees.

(2) "2.(5) If during the term of the trust above created an emergency arises in connection with the affairs of either of my children or the issue of a deceased child, and there is not sufficient income on hand to enable the trustees to make payment or payments of such an amount as will enable the said child or issue of deceased child to meet such emergency, then in their discretion they may use sufficient of the principal of the estate to make the needed payments, and their decision as to the necessity or propriety of such payment and the amount of the same shall

not be subject to question by any beneficiary of this will or other persons. Such payment or payments shall be charged to the recipient thereof or handled in such way as the trustees see fit, so as to equalize the ultimate distribution of the estate among my said children and issue."

Otherwise there is no bequest of the income or of any interest in the estate except as provided in Item 2 (4) which is as follows:

"(4) At the end of the twenty year period the trustees shall divide the trust estate among my children, share and share alike, to them and their heirs forever."

Three children survive the testator: A. Dewey Carter, Ruby Carter Gregg, plaintiffs herein, and defendant Madge Carter Kempton. All of said children now have living issue.

In 1948-49 Madge Carter Kempton instituted three separate suits against the three trustees and others in which she alleges numerous acts of maladministration, misuse, and appropriation of trust funds. She sought to recover, not for herself, but for the use and benefit of A. B. Carter, Inc. The trustees instituted an action against her to have her interest in the estate declared forfeited under the terms of Item 2 (11) of the will and to restrain her from prosecuting her actions.

The several actions were compromised by the payment of more than $150,000 to Mrs. Kempton out of the funds of A. B. Carter, Inc., under judgment entered at the May Term, 1949, Mecklenburg Superior Court.

Thereafter, Mrs. Kempton instituted another action in which she alleges that the trustees are paying to themselves excessive salaries and bonuses, dealing in trust funds with themselves and members of their families and others, and are disregarding the mandates of the will and their duties as fiduciaries under the will. She prays for construction of the will and for a recovery to the use of A. B. Carter, Inc., of all funds misused and for other relief. The defendants appeared and moved to strike certain allegations of the complaint.

Pending the hearing of the motion to strike, the parties entered into the "family settlement" agreement which is the subject matter of this proceeding.

The agreement provides that one-third of the estate, claimed by defendant Madge Carter Kempton, shall be segregated and now set apart to her. This is to be accomplished by delivering to her 1000 shares of the capital stock of A.B. Carter, Inc., and paying her $6,100 in cash for her interest in the real estate belonging to the trust, the total value of the part so set apart being $220,000. In consideration thereof, she is to release and quitclaim to the trustees all her right, title, interest, and estate in the remaining property and assets of the trust. Thereupon she is to transfer and assign said stock and her alleged interest in the real property to A. B. Carter, Inc., for the agreed value thereof.

The money received by Mrs. Kempton from the resale of said property, less certain deductions, together with $54,000 now due under the agreement adjusting the original actions, is to be delivered to the American Trust Company to be held by it in trust until 15 September 1959 (the date of expiration of the original trust)· under a trust agreement, the terms of which are in substantial accord with the original trust except that the fund is to be held for the exclusive benefit of Mrs. Kempton and her heirs and she is to be paid the income therefrom annually within the trust year it is received.

The court below, after finding certain facts, especially in respect to the litigation formerly instituted, now pending, and which may hereafter be provoked, and the probable adverse effect thereof on the trust, concluded "that it is necessary that said family settlement be made and approved in order to preserve the trust estate created by the will of A. B. Carter and to effectuate his primary purposes and intentions." It thereupon entered judgment in all respects ratifying and affirming said family settlement. S. B. Dolley, guardian *ad litem* for children *in esse* and *in posse* of A. Dewey Carter and Ruby Carter Gregg, excepted and appealed.

*Garland & Garland and Frank H. Kennedy for plaintiff appellees.*

*Tillett, Campbell, Craighill & Rendleman for appellee Madge Carter Kempton.*

*S. B. Dolley, guardian ad litem, in propria persona.*

BARNHILL, J.  Family settlements, when fairly made, are favorites of the law.  They are bottomed on a sound public policy which seeks to preserve estates and to promote and encourage family accord.  These statements in varying forms are to be found in many of our decisions. See *Redwine v. Clodfelter,* 226 N.C. 366, 38 S.E. 2d 203, and cases cited. But when a testamentary trust is the subject matter of the agreement, there are material limitations upon their application.

(1) The will creating a trust is not to be treated as an instrument to be amended or revoked at the will of devisees or to be sustained *sub modo* only after something has been sweated out of it for the heirs at law.  The power of the court is exercised not to defeat or destroy, but to preserve, it.

(2) The rule that the law looks with favor upon family agreements does not prevail when the rights of infants are involved.  A court of equity looks with a jealous eye on a contract that materially affects the rights of infants.  Their welfare is the guiding star in determining its reasonableness and validity.

(3) A court of equity will not modify or permit the modification of a trust on technical objections merely because its terms are objectionable to interested parties or their welfare will be served thereby.  It must be

made to appear that some exigency, contingency, or emergency has arisen which makes the action of the court indispensable to the preservation of the trust and the protection of infants. See *Redwine v. Clodfelter, supra.*

(4) To invoke the jurisdiction of a court of equity the condition or emergency asserted must be one not contemplated by the testator and which, had it been anticipated, would undoubtedly have been provided for; and in affording relief against such exigency or emergency, the court must, as far as possible, place itself in the position of the testator and do with the trust estate what the testator would have done had he anticipated the emergency. *Cutter v. Trust Co.,* 213 N.C. 686, 197 S.E. 542. It is not the province of the courts to substitute their judgment or the wishes of the beneficiaries for the judgment and wishes of the testator. The controlling objective is to preserve the trust and effectuate the primary purpose of the testator. *Hospital v. Comrs. of Durham,* 231 N.C. 604; *Hospital v. Cone,* 231 N.C. 292; *Penick v. Bank,* 218 N.C. 686, 12 S.E. 2d 253.

(5) The exigency, contingency, or emergency necessary to invite the intervention of the courts must relate to and grow out of the trust itself or directly affect the *corpus* thereof or the income therefrom.

The interest of the infant grandchildren, *in esse* and *in posse,* depends upon whether the date appointed in the will for the completion of the trust, and the division and delivery of the estate to those named as the ultimate takers, is a time annexed to the substance of the gift, marking the creation of the estate and the time of its vesting, or whether it operates as a mere postponement of the complete enjoyment of the estate, vesting at the death of the testator.

Where an active trust is created for the use and benefit of named beneficiaries, or there is a gift of all or a part of the income therefrom to the beneficiaries, pending final division, or there is other language in the will evidencing a clear intent that a beneficial interest in the estate shall vest in the parties named immediately upon the death of the testator, with directions to the trustees to divide and deliver the estate at a stated time in the future, the interest vests immediately upon the death of the testator and the date of division merely postpones the complete enjoyment thereof. *Coddington v. Stone,* 217 N.C. 714, 9 S.E. 2d 420; *Robinson v. Robinson,* 227 N.C. 155, 41 S.E. 2d 282; *Sutton v. Quinerly,* 228 N.C. 106, 44 S.E. 2d 521.

Conversely, if there is no gift of the estate, or the income therefrom, or other interest therein, distinct from the provision for its division, which is to be made equally between all the children and, for the first time, upon the termination of the trust, the "when" of the division is of the essence of the donation and is a condition precedent. It marks the time of vesting as well as the time of the full enjoyment of the gift.

*Anderson v. Felton,* 36 N.C. 55; *Guyther v. Taylor,* 38 N.C. 323; *Bowen v. Hackney,* 136 N.C. 187; *Fuller v. Fuller,* 58 N.C. 223; *McDonald v. Howe,* 178 N.C. 257, 100 S.E. 427; *Scales v. Barringer,* 192 N.C. 94, 133 S.E. 410; *Knox v. Knox,* 208 N.C. 141, 179 S.E. 610. See also notes, L.R.A. 1915 C 1014.

Such gifts come within the rule which annexes the time to the substance of the legacy and makes the right dependent upon the capacity of the legatee to answer at the time designated. *Giles v. Franks,* 17 N.C. 521.

When the time is annexed to the substance of the gift or devise, as a condition precedent, it is contingent and transmissible. *Bowen v. Hackney, supra.*

The will devises the estate of the testator to the named trustees for a period of twenty years. They are directed to pay one beneficiary $140 per month and permit her to occupy the residence as a home. The trustees are authorized in their discretion to use income or principal to alleviate any emergency arising in the affairs of either of testator's children or the issue of a deceased child. Any funds so expended are to be "charged to the recipient thereof or handled in such way as the trustees see fit, so as to equalize the ultimate distribution of the estate among" testator's "children and issue." If the interest of any "heir, next of kin, legatee, devisee, beneficiary" shall be forfeited under paragraph 2 (11) of the will, then such interest to which he or she "might otherwise become entitled" is devised or bequeathed "to such of the beneficiaries . . . as shall not have violated" this provision of the will. These compose all the dispositive provisions of the will.

There is no direct gift to the children of any part of the *corpus* of the estate, or the income therefrom, apart from the provisions of paragraph 2 (4) directing a division of the property at the end of 20 years. The gift to them must be implied from the language there used. Delete that paragraph and the children take nothing under the will.

At the end of the twenty-year period, the trustees are to divide the estate among testator's children. In the division of the property they are to receive it in equal shares. As they are the beneficiaries of the division, the property, by necessary implication, is given to them, title thereto vesting at the time of the division.

The devise therefore falls within the second class of cases above cited. The gift annexes the time to the substance of the legacy as a condition precedent. It is of such nature as to vest in the infants a contingent interest therein. This is not the time or the occasion for defining the exact nature of that interest. Suffice it to say that it is sufficient to invoke the protective jurisdiction of a court of equity.

The testator has provided the method of administration of his estate desired by him, and he has entrusted that administration to those named

in his will. A court of equity will not divide or otherwise alter the trust so established for any of the reasons advanced in this proceeding. If the trustees are or become persistently disregardful of their fiduciary obligations, other adequate remedies are available, and the courts, on proper application, will unhesitatingly enforce them, even to the extent of assuming complete supervisory authority over the estate. *Trust Co. v. Rasberry,* 226 N.C. 586.

The proposed settlement materially modifies the original trust as created by the testator and "sweats out" something for one of the beneficiaries. *Redwine v. Clodfelter, supra.* It divides the estate which, under the will, is to be held intact for a period of twenty years. It appoints, and vests with discretionary power, a trustee other than those named in the will. It vests in Mrs. Kempton the right to claim the income from one-third of the estate and to deduct therefrom funds with which to pay her counsel for personal services rendered to her. While not all inclusive, these specifications serve to point out that material modifications are proposed.

The former actions instituted by defendant Kempton were not against the trustees, as such, and in no wise involved the *corpus* of the estate. They were bottomed squarely on allegations of *mala fides* on the part of the trustees in the administration of the trust. She did not sue in her own behalf. She sought, in behalf of A. B. Carter, Inc., to recover from the trustees, as individuals, profits they had earned by dealing in trust property for the benefit of themselves and members of their families. That there was merit in her allegations is made evident by the fact that the trustees paid her more than $150,000 to settle the actions. The sum, however, was not paid by the trustees out of gains they had wrongfully received. It was paid out of the funds of A. B. Carter, Inc. The purpose of the actions was to recover for the corporation. Yet the corporation paid. Just why, we are unable to perceive.

The pending action instituted by Mrs. Kempton seeks to have the court construe the will, particularly in respect of the power of the trustees to fix their own salaries and bonuses and in respect of similar matters, and to recover funds allegedly unlawfully paid to themselves out of the trust estate.

Yet it is contended, and the court below found, that if that action is prosecuted to final judgment and they are required to answer the charges leveled at them therein, it will perpetuate the family feud engendered by the original actions, plunge the family into litigation, act as a constant barrier to the establishment of family peace, and tend to destroy the peace, honor, and dignity of the family.

If to be compelled to discharge the simple but important duty of accounting for their actions as trustees will disclose facts which will have

such serious results, it is high time they should be compelled to do so. If they have nothing to hide, disclosure will hurt no one.

If deep-seated suspicion between the trustees and some of the beneficiaries exists, and pending litigation will be bitter, and the trustees resent the constant surveillance of Mrs. Kempton, these conditions arise out of the mental attitudes of the parties. They are not due to any defect in the trust, unforeseen by the testator. Careful adherence to the duties and obligations imposed upon the trustees, and the prompt disclosure of those matters which should be made known to the interested parties, will go far toward removing existing irritations.

In this connection it is not amiss to call attention to the fact that while the property is devised to the trustees "to receive . . . dispose of, or lease all or any part" thereof coming into their hands "as though they were absolute owners thereof," the language "as though they were absolute owners thereof" relates to the management and disposition of the property and not to the beneficial ownership thereof. It does not relieve the trustees of the duty to manage and account for the assets of the estate as fiduciaries. Although they, as trustees, are vested with absolute title to the property during the twenty-year period, subject to the duty to account for same at the expiration of the trust, they will be held accountable for any bad faith or abuse of discretion in the management thereof.

Interference with the trust by altering the provisions thereof to prevent losses resulting from the gossip which may arise when actions based on allegations of maladministration are instituted, and the other disturbing influences growing out of such actions, are not within the equity jurisdiction of the court. Furthermore, it may not be said that it was not within the contemplation of the testator that suits might be instituted for breach of fiduciary duties and that there would be reactions therefrom which might injuriously affect the trust estate. Doubtless this is what he had in mind when he adjured his trustees to endeavor to work harmoniously together.

The court is not justified in altering a trust to preserve the spiritual values of family affection. In family settlement cases that objective, worthy though it is, cannot be made the sole basis of decision. The court acts when, and only when, it is necessary to preserve the trust and effectuate its primary purpose. This does not include the threat to the estate incident to squabbling between the trustees and beneficiaries regarding the proper administration of the trust. Such questions in respect thereto, which have been raised by the parties to this proceeding, can be settled by the courts without resort to a division or modification of the trust.

The proposed division of the trust estate is not primarily to preserve the estate, for there is no reason to believe that the present trustees cannot, if they will, manage the estate as advantageously as anyone else. It is

proposed so as to dispense with the watchful eye of one of the beneficiaries and terminate her recurring forceful reminders that the trustees are disregardful of the fiduciary duties imposed upon them by the will.

In the final analysis, the conditions about which the parties complain are created by family differences which only incidentally affect the trust. The trust is merely caught in the rip tide of family dissension. This will not suffice to support the proposed settlement.

Upon a full consideration of the record before us we are constrained to conclude that the approval of the proposed settlement by the court below was not well advised. The judgment entered to that end is

Reversed.