FIRST UNION NATIONAL BANK OF NORTH CAROLINA, EXECUTOR OF THE ESTATE OF MAUD RANKIN WALES, AND SARAH WALES BRYANT v. LEO HEARTT BRYANT, JR.; MONTFORD WALES BRYANT AND LEO HEARTT BRYANT, III, MINORS; MARGARET RANKIN RHODES; WINNIFRED RANKIN HUNSUCKER; JAMES THOMAS RANKIN; AND MONICA MONTGOMERY RANKIN, A MINOR; AND THE UNBORN CHILDREN OF SARAH WALES BRYANT.

(Filed 2 May 1962.)

**1. Appeal and Error § 21—**

Where the sole exception and assignment of error is to the judgment, and no error appears on the face of the record proper and the findings are sufficient to support the judgment, the judgment will be affirmed.

**2. Wills § 33—**

Where the beneficiary of a life estate in realty and personalty is the sole child of the widowed testatrix, and the will makes no provision for the vesting of the remainders after the life estates, the beneficiary, surviving the testatrix, takes the fee in the realty and the absolute gift in the personalty to the exclusion of collateral kin, since the remainders vest in her as heir and distributee of testatrix.

**3. Executors and Administrators § 31— Family settlement held not to adversely affect rights of infants and was fair and in accordance with testatrix' intent.**

The will bequeathed personalty one-half to testatrix' daughter for life and the other one-half to be paid the daughter's children when they attained specified ages. The will further provided that the income from the personalty left the grandchildren should be reinvested and become a part of the corpus unless the daughter needed the income "very badly." The family settlement approved by the court provided that the personalty should be held in two separate trusts, the daughter to receive the income from the one for life, with discretionary power of the trustee to use the corpus to meet any emergencies affecting her health and welfare, with remainder over after the daughter's life estate for the benefit of the

grandchildren, and the other trust to be held for the grandchildren with discretion in the trustee to use any portion of the income therefrom for the daughter if she became in absolute need thereof for her welfare or maintenance, and discretion in the trustee to expend any portion of the net income from that trust needed for the support, maintenance, and education of any grandchild, with further provision that the trust for the grandchildren should terminate on a specified date. Both the will and the family agreement provided like limitations over upon the contingency of the death of any grandchild without issue prior to the termination of the trust. *Held:* The family agreement was favorable to the infants and contingent beneficiaries, and judgment approving the family agreement is affirmed.

**4. Wills § 29—**

The possibility that a daughter of testatrix might have children after reaching the age of 53 years is insufficient to affect the validity of a trust on the ground that it made no provision for any child which might be born after that date.

SHARP, J., took no part in the consideration or decision of this case.

MOORE, J., dissenting.

APPEAL by plaintiff bank from *McConnell, Special Judge,* October Term 1961 of GASTON.

This is a civil action instituted by plaintiffs to obtain a declaratory judgment for the purpose of obtaining a determination of certain questions that have arisen in the administration of the estate of Maud Rankin Wales, and for the interpretation of her last will and testament, which interpretation is necessary to determine the ownership of certain property contained in the estate of said testatrix.

When this cause came on for hearing in the court below, all parties being duly represented waived a jury trial and agreed that the matter should be heard and determined both as to the facts and the law by the trial judge. The court considered the pleadings, heard the evidence, arguments of counsel, found the facts and concluded that a proposed family settlement is for the best interest of all parties concerned, including all present, prospective and contingent beneficiaries, and will prevent dissipation and exhaustion of the estate through long and expensive legal proceedings, and will in fact more nearly accomplish the general intent of the testatrix as expressed in her will.

Maud Rankin Wales, late of Gaston County, North Carolina, died on 28 October 1960, leaving a holographic will consisting of eleven unnumbered paragraphs, which will was duly filed and probated in the office of the Clerk of the Superior Court of Gaston County, North Carolina, on 1 November 1960.

The Trust Department of the National Bank of Commerce of Gastonia, North Carolina, was named in said will as Executor, and on

or about 18 October 1960, the National Bank of Commerce was merged with and became a part of the First Union National Bank of North Carolina, with its principal office in Charlotte, North Carolina.

Plaintiff Sarah Wales Bryant is the daughter and only child born to the late Maud Rankin Wales, and is the mother of defendants, Montford Wales Bryant, who is a minor and was seven years old at the time of the institution of this action on 15 May 1961, and Leo Heartt Bryant, III, who is a minor and was four years of age when this action was instituted.

The parts of the last will and testament of Maud Rankin Wales essential to a disposition of this appeal are as follows:

"Revoking all other wills made by me, it is my will that after my debts, if any, have been paid, the first thing to be done is to give my grandson, Leo Heartt Bryant, III and any other children that may be born to my daughter, Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) property valued the same as that my late husband, Montford Bacon Wales, and I gave our grandson, Montford Wales Bryant. The value of this gift is to be determined by the value of Montford Wales Bryant's stock at the date of my death. Montford Wales Bryant's stock is now in the possession of Leo Heartt Bryant, Jr., 842 Wellington Road, Winston-Salem, North Carolina.
" * * *

"Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) is to be given all cash that I have for her personal use only.

"Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) is to receive for her life all real estate that I own and the income from it. If necessary or expedient from a tax standpoint this property may be sold and the money reinvested for her use. I strongly advise against selling the farm on which I live as it is becoming more valuable for a real estate development unless Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) is in dire need. If she is in dire need, the house in which I live, with lot 110 feet front and 275 feet deep should be sold first for not less than $40,000.

"Of the remaining stocks that I own, I want half of them to go to Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) for her life and half of them to be divided equally between her children. I want one-half of these stocks to be given them when they are 21 years old and one-half when they are 30 years old. Unless Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) needs the income from these stocks very badly, the dividends from these stocks are to be reinvested from the date of my death and held until the children reach the age of 21 years.

"In the event that Sarah Wales Bryant (Mrs. Leo Heartt Bryant,

Jr.) does not survive me, it is my will that my estate be divided equally between her children. If either or any of these children should die without leaving descendants, the property which is received from me, shall go to his surviving brothers or sisters. If none of these children leave descendants, the property is to be equally divided between my nieces, Margaret Rankin Rhodes of Lincolnton, North Carolina, Winifred Rankin Hunsucker of Hickory, North Carolina, James Thomas Rankin of Gastonia, North Carolina (nephew) and Monica Montgomery Rankin of Beaufort, South Carolina, or their descendants.

"It is my desire to take care of my beloved daughter, Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) first and under all eventualities to keep my property in the hands of my descendants, if any.

"In case the children of Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) do not live as long as she does, she is to receive the property which I have willed them for her life if they die without descendants or without brothers or sisters. * * *"

Grady B. Stott was duly appointed guardian *ad litem* for Montford Wales Bryant and Leo Heartt Bryant, III; James B. Garland was appointed guardian *ad litem* for Monica Montgomery Rankin, a minor; and Verne E. Shive was appointed guardian *ad litem* for the unborn children of Sarah Wales Bryant. All other parties are *sui juris.*

The court, upon the facts found, adjudged: (1) That Sarah Wales Bryant was the owner in fee simple of all real estate owned by Maud Rankin Wales as of her death; (2) that the First Union National Bank of North Carolina is the duly qualified and acting Executor of the estate of Maud Rankin Wales, and directed it to administer said estate in accordance with the terms and provisions of the family settlement agreement, which agreement was approved by the court and attached to the judgment as an exhibit and adjudged to be a part thereof and legally binding upon all parties to the proceeding.

The court below further held that the contingent beneficiaries named in the will of the testatrix, to wit, Margaret Rankin Rhodes, Winnifred Rankin Hunsucker, James Thomas Rankin and Monica Montgomery Rankin, and the party defendant Leo Heartt Bryant, Jr., are not heirs, legatees, or devisees of the estate of Maud Rankin Wales, and neither of them have any right, title or interest in said estate.

The judgment and family settlement agreement provide for the Executor to distribute to Sarah Wales Bryant, for the sole use and benefit of Leo Heartt Bryant, III, the sum of $1,020.00, and to Sarah Wales Bryant the cash left by Maud Rankin Wales in the sum of $1,562.46, all household furnishings and personal effects owned by Maud Rankin Wales, and her 1956 Pontiac automobile.

The court further held that, upon the completion of the administration of the estate, which consists of real estate of the approximate value of $53,400.00; stocks of the approximate value of $114,971.01; bonds and other personalty of the approximate value of $22,119.33; cash in the amount of $1,562.46, a total approximate value of $192,-052.80, all remaining stocks or other intangible personal items shall be held by the First Union National Bank of North Carolina as Trustee for the purposes and subject to the limitations, terms and provisions and conditions set forth in the family settlement agreement.

The family settlement agreement, in sum and substance, requires the Trustee to set aside and hold separately one-half of said stocks and properties for the benefit and use of Sarah Wales Bryant during her lifetime, said trust to be known as "Trust A." All net income from Trust A shall be paid to Sarah Wales Bryant so long as she shall live, and the Trustee may pay to her so much of the principal of Trust A as the Trustee in its sole discretion deems necessary to meet any emergencies affecting her health or welfare. The net income from Trust A shall be paid to Sarah Wales Bryant as often as convenient, but at least quarterly.

The remaining one-half of said stocks and properties shall be set aside and held separately for the use and benefit of the natural children, now born or born to Sarah Wales Bryant prior to 1 July 1981, in a trust to be known as "Trust B." Trusts A and B shall be administered as separate trusts.

Upon the death of Sarah Wales Bryant, Trust A shall terminate and so much of the principal assets then remaining in said trust shall be distributed as follows: (1) If Sarah Wales Bryant dies prior to 1 July 1981, with a natural child or children then living, such assets shall become a part of Trust B and administered in accordance with the terms thereof, or (2) if Sarah Wales Bryant dies after 1 July 1981, and a natural child or children of hers is then living, or the issue of a natural child of hers is then living, then to such natural child or children of hers, share and share alike, or to such issue of the child or children of any such then deceased child of hers to take the share their parent would have taken if then living, or (3) if Sarah Wales Bryant dies either before or after 1 July 1981, without a natural child of hers nor issue of a natural child of her surviving her, then to the heirs of Sarah Wales Bryant in accordance with the then intestate laws of the State of North Carolina.

The family settlement agreement further provides: "(c) Except as hereafter authorized to be paid and distributed, the net income from Trust B shall be retained for the future benefit of the natural children of Sarah Wales Bryant, now born, or hereafter born during the exist-

ence of this Trust B, and any such sum not so paid and distributed shall annually become a part of the principal and corpus of Trust B; provided, however, the Trustee may pay all or any portion of the net income from Trust B to Sarah Wales Bryant if the Trustee in its absolute discretion at any time determines she is in absolute need thereof for her welfare, support or maintenance, or if the Trustee in its absolute discretion determines that Sarah Wales Bryant is not in need of any such net income, it may in its absolute discretion pay or expend all or any portion of the net income from Trust B needed for the support, maintenance or education of any natural child of Sarah Wales Bryant, but if the Trustee in so doing should in its absolute discretion expend more of such income on the support or education of one such natural child of hers than on another of such natural children, such excess shall not be in any way charged to any such natural child's interest in the Trust but shall be treated as a general charge and expenditure against the income of Trust B.

"Trust B shall terminate on July 1, 1981, or at such time prior to July 1, 1981, as Sarah Wales Bryant dies without a natural child of hers then living, and on the termination of Trust B so much of the property and principal then remaining in said Trust B shall be distributed as follows: (1) if there is a natural child or children of Sarah Wales Bryant then living, or the issue of a natural child of hers then living, then to such natural child or children of hers, share and share alike, or to such issue, the child or children of any such then deceased natural child of hers to take the share their parent would have taken if then living, or (2) if there is not a natural child or children of Sarah Wales Bryant then living nor the issue or (of) a natural child of hers then living, and Sarah Wales Bryant is then living, then the same shall go and become a part of Trust A and shall be administered in accordance with the terms thereof, or (3) if there is not a natural child or children of Sarah Wales Bryant then living nor the issue of a natural child of hers then living nor is Sarah Wales Bryant then living, then to the heirs of the natural children of Sarah Wales Bryant in accordance with the then intestate laws of North Carolina.

"(d) 'Net Income' for the purpose of distribution from Trust A or Trust B shall be any income received by such Trust from the properties thereinafter paying, or providing for the payment of, all taxes, fees and expenses involved in the administration or preservation thereof, and to this end the Trustee shall have the right to determine what portion of such income shall be net income and what and when any such portion of such income shall revert to principal."

From the judgment entered, the Executor appeals, assigning error.

*Mullen, Holland & Cooke for plaintiff appellant and for plaintiff appellee.*

*Grady B. Stott, guardian ad litem for appellees Montford Wales Bryant and Leo Heartt Bryant, III (in propria persona).*

*Verne E. Shive, Guardian ad litem for appellees, the unborn children of Sarah Wales Bryant (in propria persona).*

*James B. Garland, Guardian ad litem for appellee Monica Montgomery Rankin (in propria persona).*

*Garland & Eck for appellees Margaret Rankin Rhodes, Winnifred Rankin Hunsucker and James Thomas Rankin.*

DENNY, C.J.  The only exception and assignment of error is to the judgment. Therefore, unless error appears on the face of the record proper, or the findings of fact are insufficient to support the judgment entered, the judgment will be affirmed. *Insurance Co. v. Trucking Co.,* 256 N.C. 721, 125 S.E. 2d 25; *Trust Co. v. Buchan,* 256 N.C. 142, 123 S.E. 2d 489; *Webb v. Gaskins,* 255 N.C. 281, 121 S.E. 2d 564; *Goldsboro v. R.R.,* 246 N.C. 101, 97 S.E. 2d 486.

It is adjudged in the judgment entered in the court below and provided in the family settlement agreement incorporated therein that Sarah Wales Bryant is the owner in fee simple of all the real estate owned by Maud Rankin Wales at her death.

The testatrix in her will devised to Sarah Wales Bryant a life estate only in her real property. There being no devise of the remainder, and the will having no residuary clause, the remainder in said real property passed as undevised property under the law of intestacy to Sarah Wales Bryant, the only child of the testatrix. *Williamson v. Williamson,* 232 N.C. 54, 59 S.E. 2d 214. The only contingency that could possibly have given Margaret Rankin Rhodes, Winnifred Rankin Hunsucker, James Thomas Rankin, and Monica Montgomery Rankin an interest in the real estate of the testatrix never occurred, since Sarah Wales Bryant survived her mother, the testatrix.

Therefore, we concur in the judgment entered below with respect to the title of the real estate of which the testatrix died seized. The life estate and remainder having become vested in Sarah Wales Bryant, she is the fee simple owner of said real estate. *Lee v. Lee,* 216 N.C. 349, 4 S.E. 2d 880; *Trust Co. v. Watkins,* 215 N.C. 292, 1 S.E. 2d 853.

The remaining question for determination is whether or not the children, *in esse* and unborn, of Sarah Wales Bryant have been properly protected under the terms of the family settlement agreement.

The testatrix provided for the disposition of the major portion of her estate in the following language: "Of the remaining stocks that I own, I want half of them to go to Sarah Wales Bryant (Mrs. Leo Heartt

Bryant, Jr.) for her life and half of them to be divided equally between her children. I want one-half of these stocks to be given them when they are 21 years old and one-half when they are 30 years old. Unless Sarah Wales Bryant (Mrs. Leo Heartt Bryant, Jr.) needs the income from these stocks very badly, the dividends from these stocks are to be reinvested from the date of my death and held until the children reach the age of 21 years." This provision was the chief source of the confusion and uncertainty which led to the family settlement agreement.

Under the bequest of one-half the remaining stocks to Sarah Wales Bryant for her life, without any disposition or bequest of said stocks to become effective upon the death of Sarah Wales Bryant, it would seem that Sarah Wales Bryant, under the statute of distribution, became the sole owner thereof upon the death of the testatrix. However, under the family settlement agreement, these stocks are put in trust and Sarah Wales Bryant will only get the income therefrom with the provision that the Trustee may pay to her so much of the principal of said trust as the Trustee in its sole discretion deems necessary to meet any emergency affecting her health or welfare. At the death of Sarah Wales Bryant, the principal remaining in the trust created for her benefit goes to her children. If she has no surviving children or issue of her children surviving at her death, then the assets of the trust will be distributed to the heirs of Sarah Wales Bryant in accordance with the then intestate laws of the State of North Carolina.

Under the terms of the will of Maud Rankin Wales, it is doubtful that any child born to Sarah Wales Bryant after the death of the testatrix would share in the bequest of the stocks to the children of Sarah Wales Bryant. Other provisions in the will, however, indicate an intent on the part of the testatrix that any child or children born to Sarah Wales Bryant after the death of the testatrix, should share in the estate. But, under the terms of Trust B, set up in the family settlement agreement, any child born to Sarah Wales Bryant on or before 1 July 1981, will share in the bequest of these stocks and any other assets included in the trust.

While there is a possibility that a child or children may be born to Sarah Wales Bryant after 1 July 1981, it is a mere possibility and not a probability. According to the record, Sarah Wales Bryant will be 53 years of age in 1981, and the possibility of her having a child after that time is so slight, as borne out by human experience, we will not disapprove the trust based on this mere possibility. *Trust Co. v. Allen*, 232 N.C. 274, 60 S.E. 2d 117; Strong's North Carolina Index, Vol. IV, Wills, Section 29, page 510, *et seq.*

We would have preferred for the discretion of the Trustee under

Trust B, in making any disproportionate expenditure of the income of said trust on any one child, to have been limited to an emergency affecting the health of such child. However, since the children of Sarah Wales Bryant are to receive the assets remaining in Trust A at the death of Sarah Wales Bryant, if any, and all the principal assets of Trust B must be kept intact for the benefit of the beneficiaries of Trust B, we hold that the interest of the children have not been impaired in any respect by the family settlement agreement.

The judgment below simply approves and orders compliance with a family settlement agreement. When such settlements are fairly made and carry out the intent of the testator as gathered from the will, and do not adversely affect the rights of infants, they will be approved. *Redwine v. Clodfelter*, 226 N.C. 366, 38 S.E. 2d 203; *Bank v. Hendley*, 229 N.C. 432, 50 S.E. 2d 302.

In *Carter v. Kempton*, 233 N.C. 1, 62 S.E. 2d 713, *Barnhill, J.*, later *C.J.*, said: "Family settlements, when fairly made, are favorites of the law. They are bottomed on a sound public policy which seeks to preserve estates and to promote and encourage family accord. These statements in varying forms are to be found in many of our decisions. * * * But when a testamentary trust is the subject matter of the agreement, there are material limitations upon their application.

"(1) The will creating a trust is not to be treated as an instrument to be amended or revoked at the will of devisees or to be sustained *sub modo* only after something has been sweated out of it for the heirs at law. The power of the court is exercised not to defeat or destroy, but to preserve, it."

In our opinion, if any right has been surrendered in the family settlement agreement under consideration in this case, the surrender has been made by Sarah Wales Bryant in favor of her children.

The judgment of the court below is
Affirmed.

SHARP, J., took no part in the consideration or decision of this case.

MOORE, J., dissenting. I do not agree that the so-called Family Settlement approved by the court below and in the majority opinion should be sustained.

"The rule that the law looks with favor upon family agreements does not prevail when the rights of infants are involved. A court of equity looks with a jealous eye on a contract that materially affects the rights of infants. Their welfare is the guiding star in determining its reasonableness and validity." *Carter v. Kempton*, 233 N.C. 1, 5, 62 S.E. 2d 713.

It is suggested that the family settlement is favorable to the infants. I do not find it so. There is a definite possibility that their trust estates will be decreased thereby and the rights of possible contingent remaindermen will be cut off entirely.

From the findings of fact in the court below and the inventory appearing in the record, the assets of the estate are: real estate, $53,-400.00, subject to the lien of a deed of trust of unspecified amount; stocks, $114, 971.01; bonds, $4,800.00; promissory note, $15,145.33; automobile, $405.00; household goods, $1769.00.

The settlement provides that the executor shall pay all debts of testatrix's estate, the amount secured by the deed of trust, inheritance and estate taxes, costs of administration, costs of this action, attorneys fees and allowances for guardians *ad litem,* from the remaining intangible property and any income from personalty which has accrued since testatrix's death. This means that the encumbrance against the land will be borne by the personal estate, and the land, the automobile, household goods, and cash of $1,562.46 (all belonging to Mrs. Bryant) will bear no part of the debts, taxes, expenses of administration, court costs and attorneys fees. In the absence of accurate information, it seems that the family settlement, by this provision, will invade the stocks from which the trust for the infants will be set up.

It is contended that, at the death of Mrs. Bryant, the assets remaining in the trust created for her will accrue to the infants, and their estates will thereby be enhanced. This is a possibility, but it is unlikely that there will be anything left in that trust for the trustee is given *absolute* discretion by the family agreement to turn over to her any part or all of the corpus of this trust to meet any emergency affecting her health or *welfare.* And the word, "welfare," is undefined in the settlement agreement.

The settlement also gives the trustee the *absolute* discretion to pay over to Mrs. Bryant all or any portion of the income from the trust set up for the infants, if it determines at any time she is in absolute need thereof for her *welfare,* support or maintenance. This provision, in my opinion, is far in excess of the provision made in the will.

Furthermore, the trustee is authorized to expend sums for the support and education of the children without regard to equality. This is directly contrary to the will.

The courts should not abdicate their authority and shirk their responsibilities to supervise and preserve the estates of the infants by giving absolute and sole discretion to a trustee.

Moreover, the settlement arbitrarily postpones the enjoyment of a portion of the trust property as to the two infants *in esse,* and accelerates their enjoyment as to the rest. As to unborn children, it either

accelerates their interests or cuts them off altogether. It is possible that it will amount to a confiscation of the interests of contingent remaindermen.

In altering a trust, the court exercises its equity jurisdiction when, and only when, it is necessary to preserve the trust and effectuate its primary purpose. *Keesler v. Bank,* 256 N.C. 12, 20, 122 S.E. 2d 807. No such necessity exists here.