THE RT. REV. EDWIN A. PENICK, JOS. B. CHESHIRE, JR., AND ALFRED L. PURRINGTON, JR., TRUSTEES OF THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF NORTH CAROLINA; AND W. L. MARSHALL, JR., AND CURTIS CAGLE, ADMINISTRATIVE TRUSTEES UNDER ITEM XXII OF THE WILL OF GEN. WM. A. SMITH, v. BANK OF WADESBORO, OF WADESBORO, NORTH CAROLINA, AND THE SECURITY NATIONAL BANK OF RALEIGH, NORTH CAROLINA, TRUSTEES UNDER THE WILL OF GEN. WM. A. SMITH.

(Filed 20 December, 1940.)

1. **Pleadings § 20—**

A demurrer admits the facts alleged but not conclusions of law.

2. **Trusts § 11—**

Courts of equity have the power to modify the terms of a trust in exceptional cases when necessity or expediency impels, but they should not exercise this power to destroy the trust or defeat the purposes of the donor.

3. **Same—Beneficiary held not entitled to modification of provision that property be held for accumulation of income for period of 99 years.**

Testator set up two trusts. In one he devised property to the diocese of his church to be used in the erection and maintenance of a school. In the other he devised property to bank trustees with direction that the *corpus* and increment be held, invested and reinvested for a period of ninety-nine years, and that at the end of that period the *corpus* and increment be paid to the diocese of the church for the same purposes. The school was erected in the execution of one of the trusts, and this action was instituted to modify the provision of the other trust that the trustee hold the property for accumulation of the income for a period of ninety-nine years, in order to permit the present use of the net income therefrom to make necessary repairs and purchase necessary machinery and tools for the school. *Held:* The provision for the accumulation of the income for a period of ninety-nine years is not against public policy, nor so unreasonable as to justify interference by a court of equity to

direct disposition of the income in conflict with the clear, unambiguous direction of the donor, and the demurrer of the defendant bank trustees was properly sustained.

**4. Wills § 33h—**

　　Charitable trusts are not subject to the rule against perpetuities. Public Laws of 1925, ch. 264.

APPEAL by plaintiff from *Clement, J.*, at June Term, 1940, of ANSON. Affirmed.

Civil action to modify certain provisions of a charitable trust set up in the will of Gen. Wm. A. Smith.

Gen. Wm. A. Smith, of Anson County, died in 1934, leaving a will wherein, after making numerous bequests, he devised property to be held in trust for charitable purposes in the following language:

"XXI. It is my desire to aid the church and education with a part of the worldly goods God had graciously permitted me to accumulate. To this end I direct my executor to place in the Bank of Wadesboro for the Protestant Episcopal Church of the Diocese of North Carolina— should this Diocese be divided, then the fund created by this item is to go to that Diocese which includes the village of Ansonville—The sum of Twenty Five thousand Dollars value in stock of Domestic Corporations—The Bank of Wadesboro will treat this as a special trust. The said Bank is empowered to change these stocks in its discretion, to invest the increment of this fund in good, safe, dividend paying stocks, bonds, choses in action or realty bearing in mind the importance of safeguarding this fund, while increasing it for the following purpose. This fund is committed to said Bank of Wadesboro and its successors for the period of ninety-nine years, it and its accumulations to be paid to the Diocese of North Carolina at the expiration of said 99 years. My purpose is to give said bank the same power in the administration of this fund as I now possess. The Bank of Wadesboro shall receive five per cent of the increment till the fund amounts to Fifty Thousand dollars, four per cent of the increment till it increases to Seventy Five Thousand dollars, and three and one half per cent to One Hundred Thousand dollars— Afterwards three per cent of the increment as compensation for wisely, discreetly and honestly investing and reinvesting this fund. No compensation shall the Bank of Wadesboro or its successors receive for handing over the amount of this fund to the Diocese of North Carolina.

"Should said Bank decline this trust, then it is to be offered to the First National Bank of Wadesboro. Then to the American Trust Company, then to Wachovia Bk. of Winston-Salem. I further instruct my executor to place a like sum in stocks to the value of Twenty Five Thousand dollars approximately and approximating the amount placed

in the Bank of Wadesboro—into the American Trust Company of Charlotte, N. C., for a like period of 99 years to be held by them in trust, with like power of investment and reinvestment, etc., and compensation as given above to the Bank of Wadesboro. The Bank of Wadesboro and The American Trust Co. each for itself are instructed and directed to make annual report to the Diocese at its Annual Conventions—the amount of the principal and increment of this fund—Every three years said reports shall be certified to by an accredited auditor, when desired by the Diocese Convention of N. C.

"I also direct my executor to place in the Bank of Anson, Ansonville, N. C., Five Thousand Dollars in good stocks or cash in said Bank of Anson with the same and like powers changing said stock in its discretion, in investing and reinvesting, compensation and reports to the Annual Conventions of the Diocese of North Carolina—and at the close of the 99 year period to pay the total amt. of this fund to said Diocese. Should either Bank decline this trust and trusteeship, then I direct my Executor to offer it to the Bank of Wachovia in Winston-Salem. This fund when paid to the Diocese of North Carolina is to be used and administered by said Diocese as directed in item XXII of this will."

"XXII. I give to the Diocese of North Carolina as named in item XXI of this Will, the remainder of my estate both real and personal, to be used primarily for the benefit of my race—for purposes as set down below.

"I request and direct the Convention of North Carolina at its first session after I fall on sleep to select and appoint for a term of three years, three honorable, capable and discreet members of the Protestant Episcopal church, residing in Anson County to administer this fund:— Erecting buildings on land in or near the village of Ansonville, to an amount not exceeding in cost Fifty Thousand dollars and setting apart the balance or remainder of the fund given by this item as a permanent fund using only the increment. These three trustees and their successors to be appointed triannually and they and their successors are instructed to use the fund created by this item and by item XXI in schools for both sexes of the white race—Educational and Industrial schools, hospitals, gymnasiums and other purposes in their discretion—mainly and principally I have in mind training youth trades and domestic arts by which they may be enabled to earn their own living and become efficient members of our County and Commonwealth.

"This fund and that created by item XXI when it comes into possession of the Diocese shall be known as the 'Gen. Wm. A. Smith Trust' or other designation the Convention may elect to name it, shall be administered by the three trustees and their successors according to their judgment and discretion, limited only to Ansonville and its near vicinity.

They shall submit an annual report to the Convention of the Diocese of North Carolina setting forth in full, the amounts received and disbursed, the purpose of disbursement, their acts during each year and reasons for said acts, accompanied by an authorized auditor's report."

By this action the Protestant Episcopal Church of the Diocese of North Carolina, and the administrative trustees under Item XXII of the will, ask the court to permit the use of the net income from the trust set up in Item XXI in order to aid and further the objects of the trust declared in item XXII, and to modify the trust provision for the accumulation of income for 99 years as contrary to public policy and adverse to the best interests of the ultimate beneficiary.

Defendants, the trustees of the funds provided in item XXI, demurred to the complaint. The demurrer was sustained and the plaintiffs appealed.

*Talliaferro & Clarkson for plaintiffs, appellants.*
*Paul F. Smith for defendant Security National Bank.*
*Frank L. Dunlap, Mrs. Lee Smith McKeithen, and R. L. Smith & Son for defendant Bank of Wadesboro.*

DEVIN, J. By his will Gen. Wm. A. Smith made provision for the establishment of two trust funds, the ultimate beneficiary in both being the Protestant Episcopal Church of the Diocese of North Carolina. In the first the testator devised the sum of $55,000 to the three named banks, as trustees, to constitute a fund to be safely invested and the income to accumulate for 99 years, at the end of which period "it (the fund) and its accumulations" are to be paid to the Protestant Episcopal Diocese of North Carolina. In the second, a fund derived from sale of real and personal property was devised in trust for the benefit of the Diocese of North Carolina, with specific directions as to its use and purposes. These included the erection of a school building at a cost not exceeding $50,000, the remainder of the devise under this trust to be set up as a permanent fund and the income used for the maintenance of the school or schools. Provision was made for the selection of trustees to carry out the purposes expressed.

It was alleged in the complaint that in carrying out the provisions of the second trust the trustees selected therefor have erected a building and provided for the operation of an agricultural and training school, with assistance from the National Youth Administration, sale of timber, and use of income from the property devised, but are without sufficient funds to make repairs and purchase necessary machinery and tools for teaching agriculture; that from the income from the fund set up under the second trust it was directed in the will that an annuity for the testator's widow

(now 80 years old) and the upkeep of the house must be paid, and that, in order to carry out the expressed purposes of the testator and for the best interest of the ultimate beneficiary, the net income from the trust fund set up in item XXI should be paid over as earned, and that the provision for accumulation of income for 99 years should be modified as inexpedient, unnecessary and contrary to public policy.

The defendants demurred to the complaint, and their demurrer was sustained. By their demurrer the defendants admit the facts alleged, but not the conclusions of law asserted by the pleader. *Leonard v. Maxwell*, 216 N. C., 89, 3 S. E. (2d), 316.

Cases involving the administration of trusts and trust estates are peculiarly within the jurisdiction of courts of equity, and the power of the court, in exceptional cases, to modify the terms of the trust has been generally upheld. But the power of the court should not be used to direct the trustee to depart from the express terms of the trust, except in cases of emergency or to preserve the trust estate. *Seigle v. First Nat'l. Co.*, 338 Mo., 417. The court has power, under certain circumstances, to modify the terms of a trust, but this power should not be exercised to destroy the trust or defeat the purpose of the donor. *Cutter v. Trust Co.*, 213 N. C., 686, 197 S. E., 542.

In *Trust Co. v. Laws*, 217 N. C., 171, 7 S. E. (2d), 470, it was said that a court of equity had power, when necessity or expediency impelled, to close a trust or modify its terms. And in *Bond v. Tarboro*, 217 N. C., 289, 7 S. E. (2d), 617, it was decided that the power of the court could be exercised to the extent of authorizing the execution of a mortgage on the trust estate when necessary for its preservation. In *Reynolds v. Reynolds*, 208 N. C., 578, 182 S. E., 341, upon a showing of changed conditions, by the consent of all concerned, and for the purpose of a family settlement, modification of the terms of the trust was authorized.

In the instant case, the intent of the testator is clearly expressed that the trust fund set up in item XXI of his will shall be invested and reinvested, both as to the *corpus* and the increment, and that at the expiration of 99 years the fund and its accumulations shall be paid to the beneficiary, the Protestant Episcopal Diocese of North Carolina. The trustees are banks, incorporated, and the ultimate beneficiary is a religious body of unlimited duration. The wisdom of extending the duration of the trust for 99 years is not a matter for us to decide. The property was that of the testator, and the law permitted him to dispose of it as he wished. We cannot hold that the disposition under consideration violated any law or contravened any rule restricting the transmission and tenure of property. We cannot undertake to change the disposition he has made of what he owned. It has not been shown wherein public injury would result, or that the terms of the trust are

contrary to any principle of public policy or prejudicial to the public interest.   *Woodruff v. Marsh,* 63 Conn., 125, 26 Atl., 846.

Speculations as to what conditions may prevail at the termination of the period, or the possible consequences of attempting to administer a fund for so long a time, are not sufficient to defeat the manifest intent of the donor.   Charitable trusts are not subject to the rule against perpetuities.   Public Laws 1925, ch. 264; *Williams v. Williams,* 215 N. C., 739, 3 S. E. (2d), 334.   Nor are the terms of the trust indefinite, either as to the purpose, the method of administration, or the beneficiary.   *Woodcock v. Trust Co.,* 214 N. C., 224, 199 S. E., 20.

It was said in the recent case of *Hills v. Travelers Bank & Trust Co.,* 125 Conn., 640, "The function of the court with reference to trusts is not to remake the trust instrument, reduce or increase the size of the gifts made therein, or accord the beneficiary more advantage than the donor directed that he should enjoy, but rather to ascertain what the donor directed that the donee should receive and to secure to him the enjoyment of that interest only."   And in *Paul's Church v. Attorney-General,* 164 Mass., 204, it was said that "to authorize equitable interference with the accumulation directed by the testator, the accumulation should be unreasonable, unnecessary and to the public injury."

In 2 Bogert on Trusts and Trustees, sec. 353, will be found collected a number of cases upholding provisions in charitable trusts for accumulation of income over long periods of time.   Cited among them is the case of *Boston v. Doyle,* 184 Mass., 373, relating to the will of Benjamin Franklin, wherein a fund was established to be used for certain charitable purposes at the expiration of one hundred years.

In *Frazier v. Merchants National Bank of Salem,* 296 Mass., 298, 5 N. E. (2d), 550, the provisions in a will setting up a trust fund of $117,000 and requiring that the income therefrom be permitted to accumulate until the principal and interest reached the sum of $1,000,000 and then to be held as a permanent trust fund for a hospital, was upheld as not contrary to public policy.

It will be noted in the case at bar that the accumulation of income is part of the trust.   To divert it to other purposes, even if in aid of another trust set up by the testator, would to that extent defeat his intention.   It seems that one fund was set up for the present generation; the other for those who should come after.   The testator's purpose to postpone enjoyment of a portion of his bounty is in conflict with no principle of public policy, nor is it so unreasonable as to justify interference by a court of equity.

The action of the plaintiffs, in moving to have the terms of the trust modified to the extent of permitting the use of the income of the fund, is prompted by the commendable desire to supply a present need in the

administration of another worthy charity, but we are constrained to follow the manifest intent of the testator and to hold that the terms of the will shall prevail.

The judgment of the court below in sustaining the demurrer is

Affirmed.