IN THE MATTER OF THE TRUSTEESHIP OF SARAH GRAHAM KENAN. IN RE AMENDED PETITION TO THE RESIDENT JUDGE OF THE FIFTH JUDICIAL DISTRICT (PURSUANT TO CHAP. 111, P.L. 1963).

AND

IN THE MATTER OF THE TRUSTEESHIP OF SARAH GRAHAM KENAN. IN RE AMENDED PETITION TO THE RESIDENT JUDGE OF THE FIFTH JUDICIAL DISTRICT (PURSUANT TO CH. 112, P.L. 1963).

AND

IN THE MATTER OF THE TRUSTEESHIP OF SARAH GRAHAM KENAN. IN RE AMENDED PETITION TO THE RESIDENT JUDGE OF THE FIFTH JUDICIAL DISTRICT (PURSUANT TO CH. 113, P.L. 1963).

(Filed 4 November, 1964.)

**1. Appeal and Error § 60—**

The decision on appeal becomes the law of the case in subsequent proceedings in the trial court and upon subsequent appeal.

**2. Insane Persons § 4; Trusts § 5—Court has authority to authorize trustee to make gifts from incompetent's estate upon findings that incompetent would probably make such gifts if he were competent.**

In this proceeding to authorize the trustees to make certain specific gifts from the income and principal of the estate of their incompetent and to make a revocable *inter vivos* trust irrevocable and to give the income from such trust to certain designated charities, the evidence *is held* to support the findings of the trial court to the effect that the proposed gifts could not possibly prejudice the incompetent (the incompetent being incurably insane and there being income from her estate greatly in excess of any possible need for her support, care, and comfort), that the gifts would increase the value of her residuary estate at her death, and that the incompetent if of sound mind would probably have made the gifts in the manner proposed, and judgment modifying the trust and authorizing the trustees to make the specified gifts is affirmed. Chapters 111, 112 and 113, Session Laws of 1963.

**3. Trusts § 5; Constitutional Law § 25—**

The trust in question was revocable and provided that the trustor should receive for life the income from the trust estate. The trustor later became mentally incompetent, and the jury found that there was no prospect for her recovery. *Held:* Modification of the trust by making it irrevocable and donating the income for the life of the trustor to certain designated charities does not rewrite the contract so as to affect the rights of the ultimate beneficiaries, but merely authorizes the trustees to do those things which the trustor, if competent, would probably have done.

**4. Same; Wills § 1; Parties § 1—**

The beneficiaries of a will have no interest in the estate so long as the testatrix is alive, and therefore are not necessary parties in a proceeding to authorize the trustees of an incompetent's estate to make certain gifts from the income and corpus of her estate in accordance with what the incompetent would probably have done if she were competent, and the incompetent and her guardian are the only necessary parties to such proceeding, notice of the filing of the petition by the trustees for the incom-

petent having been given the nonresident beneficiaries as prescribed by G.S. 1-104.

MOORE, J., dissenting.

BOBBITT, J., joins in dissent.

APPEALS by Wallace C. Murchison and Louis A. Burney, as guardians *ad litem,* and by William R. Kenan, Jr. and A. R. MacMannis, as trustees, from *Mintz, J.,* June 22, 1964 Civil Session of NEW HANOVER.

*Wallace C. Murchison, Guardian Ad Litem for Sarah Graham Kenan, Incompetent.*

*Louis A. Burney, Guardian Ad Litem for named minors.*

*Hogue, Hill & Rowe for appellants MacMannis and Kenan, as Trustees.*

*John T. Manning, Marshall & Williams and Joyner & Howison for appellee.*

RODMAN, J. Sarah Graham Kenan was adjudged incompetent by the Superior Court of New Hanover County in May 1962. Her nephew, Frank H. Kenan, was appointed as trustee of her estate and person. Shortly after his appointment, he filed, in the Superior Court of New Hanover County, three verified petitions. These petitions sought judicial sanction for: (1) A proposed gift from the income to accrue to Mrs. Kenan's estate during 1963; (2) a gift from the principal of her estate; and (3) a gift of Mrs. Kenan's right for her life to the income derived from a trust created by her and the surrender of her right to revoke that trust. The trustee, in seeking court authorization, relied on Chapters 111, 112 and 113, S.L. 1963, now codified as Articles 5A, 5B and 5C, chapter 35 of the General Statutes.

The trustee was, by judgments entered in June 1963, authorized to make the gifts, and to make the trust irrevocable. Present appellants appealed from the judgments then rendered. Each judgment was reversed. The opinion disposing of those appeals, reported 261 N.C. 1, 134 S.E. 2d 85, is referred to for a statement of the facts deemed decisive on those appeals. It was then said: "A court may authorize a fiduciary to make a gift of a part of the estate of an incompetent only on a finding, on a preponderance of the evidence, at a hearing of which interested parties have notice, that the lunatic, if then of sound mind, would make the gift." The opinion concluded with this language: "Petitioner may, if he elects, obtain permission to amend his petitions to allege that the authority which he seeks is something which Mrs. Kenan

would do, if competent. If permission to amend is allowed, petitioner may then offer evidence to establish the truth of his allegations."

Petitioner, when the causes were returned to the Superior Court, sought and was granted permission to amend each petition. Notices of the proposed amendments were given to all interested parties. The amendments proposed to each petition may be summarized as follows:

*Petition, designated in the record as C. 111, seeking authority to make gifts from income:* The gifts are to come from income accruing in 1964, instead of 1963 as originally contemplated. The aggregate of these gifts is reduced from $731,600, to $606,600. The reduction results from the elimination of the proposed gift of $125,000 to the North Carolina Episcopal Church School for Boys, Inc. Mrs. Kenan's income for 1964 is expected to exceed $4,025,000. This is more than was originally estimated or actually received in 1963. "Sarah Graham Kenan, if competent, would make the gifts herein sought to be made and approved, as provided for under Chapter 111 of the Session Laws of North Carolina, 1963, and as set out in Exhibit 1-A, attached hereto and made a part hereof; and she would make the gifts and take the action herein sought to be approved by the petitioner; and those things which the petitioner seeks authority to do, as herein set forth, are things which Sarah Graham Kenan would do, if of sound mind; and the authority which he seeks is something which she would do, if competent; and the authority herein sought is wise and consistent with the desires of Sarah Graham Kenan, if she were competent; and that if she were competent, and heeding sound advice, and possessed of the facts known to the Judge of this Court on the effective date of any Order signed by him upon this Petition, she would make, or probably would make, such gifts herein sought to be approved; and the said Sarah Graham Kenan, if competent, would, or probably would, do the things which her said trustee seeks authority to do, as herein set forth."

*Petition seeking permission to make a gift from the principal of incompetent's estate, Proceeding 112.* Originally, the trustee sought authorization to make a gift of $100,000 to the "State of North Carolina for the North Carolina Museum of Art Building Fund, and possibly to other donees qualified under Chapter 112 of the Public (Session) Laws of North Carolina, 1963." It is now proposed to give designated and preferred stocks to "Sarah Graham Kenan Foundation, Inc." "It is the intent of the Trustees of the Sarah Graham Kenan Foundation, Inc. that, if the gifts of principal herein proposed are approved, there will be made out of the first available income of the foundation a gift of One Hundred Thousand ($100,000.00) Dollars to the State of North Carolina for the North Carolina Museum of Art Building Fund."

It is also alleged, in substantially the language alleged in the petition for authority to make gifts from the income, that Mrs. Kenan, if competent, would act as the trustee seeks authority to act.

*Petition seeking permission to make the inter vivos trust irrevocable and give the income for the life of Mrs. Kenan to designated charities, Proceeding 113:* The provisions for payment from the income to the North Carolina Episcopal Church School for Boys, Inc. was deleted, otherwise the donees are the same. Allegations with respect to what Mrs. Kenan would do, if competent, are made in substantially the language quoted from the petition seeking authority to make gifts from the 1964 income. Additionally, petitioner alleges: "That the Petitioner respectfully petitions the Court by this duly verified Amended Petition to ratify and confirm the action taken by Petitioner on June 28, 1963, on which date Petitioner, by executing an Instrument of Amendment of Trust and Release of Further Right to Revoke or Amend, dated June 28, 1963, declared the aforesaid revocable *inter vivos Trust* dated December 26, 1956, to be irrevocable and made the incompetent's life interest therein the subject of public, religious, charitable, literary, scientific, historical, medical, and educational gifts as provided in Chapter 113 of the Public (Session) Laws of North Carolina, 1963, Petitioner having been authorized to execute said Instrument of Amendment of Trust and Release of Further Right to Revoke or Amend, by an Order of this Court made and entered in this Proceeding on June 28, 1963, a copy of said Instrument having been attached to said Order, and designated therein as Exhibit AT-113; and which Order and Exhibit AT-113 are filed in the office of the Clerk of Superior Court of New Hanover County, North Carolina, and said Order, and said Exhibit AT-113 (as executed as aforesaid) are hereby specifically referred to and by reference the said Instrument, as executed (Exhibit AT-113) is made a part hereof and incorporated herein; and the public record thereof on file in the office of the Clerk of Superior Court of New Hanover County is hereby specifically made; and said Petitioner respectfully petitions the Court to ratify and approve the execution and delivery by Petitioner of said Instrument dated June 28, 1963, and the making of the gifts set out in said Instrument and also set out in the said Order of this Court dated June 28, 1963, as aforesaid; and as set out in Exhibit T-A attached hereto and made a part hereof."

The several actions were consolidated for the purpose of taking testimony. A single issue was submitted to the jury. It found that it was improbable that Mrs. Kenan would recover competency during her lifetime.

The parties waived jury trial on all questions or issues raised by the pleadings, other than the single question submitted to the jury.

The court made findings of fact and conclusions of law in each case, and on these findings and conclusions rendered judgment in each proceeding.

Basic to all the proceedings, the court found these facts: Frank Kenan had duly qualified as trustee and had possession and control, either actual, or constructive, of all of Mrs. Kenan's estate. Mrs. Kenan had, before she became incompetent, executed wills disposing of her properties. The beneficiaries named in the wills, as well as those who would take if Mrs. Kenan should die intestate, had been given due notice of the proceeding and were properly before the court. Mrs. Kenan had, before becoming incompetent, created a revocable trust under the laws of this State with respect to 120,000 shares of Standard Oil Company of New Jersey. The trustees under that trust had been duly notified of the filing of the original and amended petition, and were, because of their general appearance, properly before the court. Mrs. Kenan, now 88 years of age, is a widow. She has no children or other descendants. There is no person who has a legal right to look to her for support. The beneficiaries of the trust, subject to Mrs. Kenan's right to receive the income for her life, are her nephews, James G. Kenan and Frank H. Kenan, if they survive her, and, if not, their children take. The proposed donees are charitable or educational institutions. The value of her estate, excluding her rights under the *inter vivos trust,* is $118,000,000. Her income for 1963, exclusive of income from the trust was $3,442,491.00, and is expected to exceed $3,670,000 for 1964. $45,000 per annum will provide adequately for her needs. Prior to his appointment as trustee, Frank H. Kenan was not familiar with the extent of his ward's estate. Promptly on his appointment, he made a careful study and came to these conclusions:

"(1)   That it is wise and provident and proper that the gifts be made and the action be taken as prayed for in the original Petitions and the Amended Petitions; and

"(2)   That it is consistent with his powers and duties existing under the North Carolina law, and as recognized and limited by Chapters 111, 112 and 113 of the Session Laws of 1963, that the gifts be made and the action taken as sought by him in the said original Petitions and Amended Petitions; and

"(3)   That the natural objects of Sarah Graham Kenan's bounty would recommend that the action sought to be approved in the original Petitions and the Amended Petitions be taken; that it was his

duty, as her Trustee, to seek approval of such action, and that the taking of such action was in the best interest of his ward and her estate; and that if competent, Sarah Graham Kenan would take such action.

"Frank H. Kenan has testified and the Court believes his testimony and finds as facts:

"(a)   that he has continued to hold to those conclusions as sound and valid at all times subsequent to the filing of the original Petitions and the Amended Petitions, including the time of the testimony given by him in this proceeding; and

"(b)   that if Sarah Graham Kenan were competent now, he would go to her and explain the facts as disclosed by this record and by the testimony of the witnesses in this proceeding and would recommend to her that she make the gifts and take the action for which he seeks authority in said Amended Petitions; and

"(c)   that he would request his brother, James G. Kenan; his cousins, William Rand Kenan, Jr. and Lawrence Lewis, Jr.; Dr. Ewald W. Busse, who is an expert in geriatrics and gerontology; Leon L. Rice, Jr., Richard E. Thigpen and John L. Gray, Jr., estate planning experts; and John W. Scott, an expert in the field of taxation, to give to a competent Sarah Graham Kenan in person or in writing the advice, opinions and recommendations which they have given to this Court as disclosed by the record of this proceeding."

The persons named in the preceding paragraph, other than William Rand Kenan, Jr., were witnesses. Each expressed the opinion that the proposed gifts would be advantageous to Mrs. Kenan's estate and to those who, by virtue of her wills and the trust agreement, would receive the bulk of her estate upon her death. Each went into detailed explanation of reasons for the opinion expressed. Each testified that if Mrs. Kenan were competent and sought his advice he would, for the reasons given, recommend that she pursue the course proposed by the trustee.

W. R. Kenan is a resident of New York; he is 92 years of age. He was not a witness but, as an individual, he filed answers to each proceeding. He said in his answer to the proceeding to make a gift from income: "I am familiar with her [Mrs. Kenan's] present physical and mental condition and the manner in which she is being supported and cared for and I am also familiar with the amount of her property and her income and income taxes; over the past many years my sister, Sarah Graham Kenan, always took my advice in connection with busi-

ness matters and under the circumstances existing I would advise her to make the gifts as requested in the Amended Petition and if she were competent I believe she would follow my advice and make such gifts." He makes similar statements in his answer to the amended petition in each of the other proceedings. Mrs. Kenan's nephews, Frank and James, and other relatives testified to the love and affection which Mrs. Kenan had for her brother William, and the reliance she placed on suggestions or recommendations he made with respect to the handling of her properties.

As a trustee of the trust created in 1956, Mr. Kenan, with his co-trustee, MacMannis, filed an answer in which they said: "That as Trustees under the revocable *inter vivos* trust dated December 26, 1956, they are stakeholders and hold the corpus of the trust estate under the terms and conditions of said Trust Agreement, which have been set forth in the previous trial of this cause. That as stakeholders they take no position with respect to whether or not the relief asked for in this Petition should be granted, this being for the determination of the court upon hearing all of the facts and making the necessary findings as set forth and required in Chapter 113 of the North Carolina Session Laws of 1963. That to grant the relief requested would result in rewriting the Trust Agreement which these Respondents are informed and believe the court has no authority to do under the law of North Carolina as decided by the Supreme Court of North Carolina in this cause as reported in 261 N.C. 1, 134 S.E. 2d 85."

The Court specifically found: "[O]n all of the evidence in this proceeding (of which proceeding all interested parties were given proper notice) and on the preponderance of the evidence, that Sarah Graham Kenan, if of sound mind, would make the gifts and property dispositions and take the action approved and authorized in this Order, and would make the gifts and take the action approved and authorized in the Orders entered in the other two proceedings referred to elsewhere herein.

"(b)   In further support of the Finding of Fact immediately set forth above, the Court makes the following special and detailed Findings of Fact, that is, the Court finds as facts that if Sarah Graham Kenan were competent

"(1)   Frank H. Kenan would go to a competent Sarah Graham Kenan and would make known to her the facts disclosed by the record in this proceeding.

"(2)   Frank H. Kenan would recommend to a competent Sarah Graham Kenan that she make such gifts and take such action for the

benefit of herself and for the objects of her bounty and for the good which she would thereby accomplish.

"(3)   Frank H. Kenan would request the persons named in subparagraph (c) of paragraph 30 next hereinabove to relate to a competent Sarah Graham Kenan, in person or in writing, the facts and opinions expressed by them to this Court, and to make to her the recommendations made by them in the course of this proceeding, and the Court finds as facts that upon such requests made by Frank Kenan to those persons, each of them would repeat to a competent Sarah Graham Kenan the facts and recommendations which they have expressed in this Court.

"(4)   Sarah Graham Kenan would know and would consider (among other things) the facts:

"(i)   that she is eighty-eight years of age, has had two paralytic attacks, that her life might end suddenly at any time, and

"(ii)   that she could not possibly need or intelligently spend any substantial part of her great annual income or any part of her enormous principal and that the making of the gifts and taking the action recomemnded to her (which is the action sought to be authorized and approved under the Amended Petitions) would not endanger or jeopardize the provisions for her care and upkeep and would not endanger or jeopardize the carrying out of all bequests set forth in her Wills, and

"(iii)   that taking the action recommended to her (which is the action authorized and approved in these proceedings) would increase the value of her residuary estate at her death and would materially benefit the objects of her bounty and would contribute to the benefit of many worthy causes and agencies beloved by her, or of the class or kind beloved by her, and that she had received expert, sincere and intelligent advice that the making of said gifts and taking such action would give to her a satisfaction and healthful feeling of self esteem, and

"(iv)   that one of her only means of being useful in the world or of performing a creditable function as an individual at her age and in her condition was through the employment by her of her money in the making of gifts to help people and promote worthy causes; and that such worthy employment of some of the surplus portion of her otherwise sterile wealth would give her an interest and satisfaction in life, and would perpetuate the good name of the Kenan family, which has always been one of her principal interests, and

"(v)   that her brother, William Rand Kenan, Jr., upon whom she had almost always relied for advice and whose advice she had almost uniformly followed, had recommended this action be taken, and

"(vi)   that her only sister, Mrs. Jessie Kenan Wise, had followed sound estate planning advice and had taken similar action, and that her great nephew, Lawrence Lewis, Jr., had recommended to her that these gifts be made and that this action be taken, and

"(vii)   that her nephew, James Graham Kenan, and her nephew, Frank H. Kenan, the natural objects of her bounty over a period of many, many years, and the testamentary residuary takers of her estate, and the primary beneficiaries under the 1956 trust, had recommended that these gifts be made, and that this action be taken, and

"(viii)   that the other legatees named in her Wills would not be adversely affected by the recommended action.

"(5)   Sarah Graham Kenan would believe what was said to her by the persons advising her and would accept their opinions and recommendations as sincere, wise and proper and would rely upon the soundness of the advice so given to her, and would make the gifts and take the action recommended to her (which is the action herein authorized and approved by this Court and in the other two proceedings).

"(6)   Sarah Graham Kenan would heed such advice and make the gifts and take the action so recommended (such action being the same as that authorized and approved by this Court as herein provided and in the other two proceedings)."

Based on its findings, the court entered judgments granting the prayers of the petitions. MacMannis and Kenan, as trustees, appealed only from the judgment relating to the trust agreement. Murchison and Burney, as guardians, appealed from each judgment.

The conclusion reached on the prior appeal that the Superior Court, on proper findings, supported by competent evidence, could authorize Frank H. Kenan, as trustee, to do for his ward what she would do, if competent, is the law of this case. The conclusion then reached is, we think, logical and supported by well reasoned cases from the highest courts of the states of this Nation and England. No reasonable argument has been advanced which would warrant a different conclusion.

We do not understand appellants to challenge the conclusion reached on prior appeal that the court could authorize the trustee of Mrs. Kenan's estate to do for her what she would do herself, if competent. Their position is that no one can know what Mrs. Kenan would do in

any particular situation, if she were competent. They maintain that any answer given to that query must be speculative, and not sufficient to warrant a court decree. To so hold would distort and destroy the theory on which the prior opinion was based.

Of course, no court should authorize a guardian, or trustee, of an estate of an incompetent to act in a manner which will prove detrimental to the estate of his ward; but it does not follow that the proposed action must be one which benefits or enhances the estate of the ward. We deal now with a situation of that kind. It is not contended that the authorization which the trustee seeks can possibly benefit Mrs. Kenan. What the evidence suffices to show is that if the trustee is permitted to act as requested, those who will take the bulk of Mrs. Kenan's properties at her death will be advantaged financially. Charities and educational institutions will also receive funds enabling them to further the laudable purposes for which they were created. Execution of the desired authority would not, when considered in relation to the size of Mrs. Kenan's estate, be prejudicial to her.

The statement that the court could authorize a fiduciary to act as the incompetent *would* act, if competent, was an answer to the contention then made that the court *could* authorize the gifts even though the incompetent *would not*, if competent.

What it is necessary to establish is that the act proposed is "that which it is probable the Lunatic would himself have done," *Ex Parte Whitbread;* or "as it is probable he would have acted for himself, if he were of sound mind," *In Re Flagler.* These quotations are taken from the earlier opinion.

We are of the opinion, and hold, that the evidence, while it did not require, was adequate to support the court's factual conclusions. These conclusions were sufficient to support the legal conclusions and the judgments based thereon.

On December 26, 1956, Mrs. Kenan, by agreement in writing, transferred to William R. Kenan, Jr., James G. Kenan, Frank H. Kenan and A. R. MacMannis, as trustees, 120,000 shares of Standard Oil Company of New Jersey. The agreement provides: "The net income shall be paid to or applied for the benefit of the Donor [Mrs. Kenan] so long as she shall live."

Upon her death, the trust assets are to be divided into two parts, one to be held in trust for James G. Kenan and his children, the other for Frank H. Kenan and his children.

Section D of Article II provides: "No disposition, charge or encumbrance on the income of any trust by any beneficiary by way of anticipation shall be valid or in any way binding upon the Trustees,

and no beneficiary shall have the right to assign, transfer, encumber or otherwise dispose of such income, or any part thereof, until the same shall be paid or distributed to such beneficiary by the Trustees, and no income, or any part thereof, shall in any wise be liable to any claim of any creditor of any such beneficiary."

Article V reads: "The Donor reserves the right to revoke or amend this Agreement at any time and from time to time by a written instrument other than a will, duly executed and acknowledged by her and delivered during her life to the Trustees at the time in office."

Do the quoted provisions prevent the court from authorizing the trustee to donate the life income reserved by Mrs. Kenan to charities and surrender her right to revoke the trust agreement? Appellants argue that to so authorize would be to rewrite the contract which Mrs. Kenan had made when competent. Appellants misapprehend what authority the trustee seeks to exercise. He merely seeks court authority to do those things which Mrs. Kenan, if competent, could, and probably would, do. If she, when competent, could donate to charities the income reserved for her life, then the court, acting for her and in her behalf, could do what she would do, and, of course, if the court, acting for her and in her behalf, could give the income because she would give it, it could authorize the surrender of the right to revoke because she would have authorized it. The court's decree in no way impairs any contractual right which Mrs. Kenan has. It merely acts for and in her behalf.

Chapters 111, 112 and 113, S.L. 1963, limit the power of a guardian or a trustee to make gifts of the character enumerated in those statutes. He may do so only with the approval of the Resident Judge of the Superior Court of the county in which the guardian or trustee was appointed. To secure approval, the guardian or trustee must file a verified petition setting out what authority he wishes and the reasons justifying his request. Section 2 of each act enumerates facts which must be shown to the "satisfaction" of the judge in order to obtain the requested authorization. Chapters 112 and 113 make a condition precedent to approval "at least ten (10) days written notice that approval for such gifts will be sought and that objection may be filed with the Clerk of the Superior Court, of the county in which the guardian or trustee was appointed," to those named as legatees or devisees, if incompetent has executed a will, or to those who would be heirs and distributees if the incompetent died intestate contemporaneously with the filing of the petition.

Appellants challenge the power of the court to authorize the trustee to act in the 112 and 113 proceedings, because some of those named as

beneficiaries in Mrs. Kenan's wills are not residents of the State of North Carolina. Notice of the filing of the petitions was given to these nonresidents by service as prescribed by G.S. 1-104. Appellants assert: These nonresidents are necessary parties; the court could not acquire jurisdiction over a nonresident by personal service of process outside of the state; hence service as provided by G.S. 1-104 would not give the court jurisdiction over these nonresidents. They further contend the court did not have jurisdiction over the *res,* the stocks and bonds placed in New York for safekeeping and, because the court did not have personal jurisdiction over the nonresidents, or jurisdiction over the *res,* it lacked authority to authorize the trustee to act.

The answer to the contention is apparent. Those named as beneficiaries in Mrs. Kenan's will have no interest in her properties so long as she lives. They take at her death only such properties as she then owns. They are not parties, and the statute does not purport to make them parties, to a proceeding initiated by the trustee. The statutes do recognize the contingent or potential interest of those who would probably benefit financially by the death of an incompetent; and, because of their interest, notice must be given to them. Those who must have notice are given an opportunity to present to the court facts which will assist the court in determining whether the action proposed by the trustee is detrimental to the estate of the incompetent, or whether the incompetent, if then competent, would probably not act as the trustee proposes to act. The proceeding is *in personam.* Mrs. Kenan and her guardian are the only necessary parties. Any judgment rendered by the court binding on Mrs. Kenan would be entitled to full faith and credit.

We would be remiss if we concluded this opinion without expressing our appreciation for the diligence of counsel and the able manner in which they have presented their contentions.

The judgment in each proceeding is

Affirmed.

Moore, J., dissenting:

The conclusion reached by the majority opinion compels me to disagree. I take the liberty of reviewing the facts and procedures and discussing features of the case which to me are significant and controlling.

In 1955 Sarah Graham Kenan was 79 years old, a widow with no descendants or dependants. The value of her property was then approximately $52,000,000. That year she executed testamentary writings providing for the disposition of her property at her death. She

made bequests totaling approximately $800,000 to the following religious, charitable and educational institutions: Memorial Presbyterian Church of St. Augustine, Fla., St. James Episcopal Church of Wilmington, Thompson Orphanage of Charlotte, First Presbyterian Church of Wilmington, St. Mary's Junior College of Raleigh, University of North Carolina for the University Library and the Graham Kenan Fellowship in Philosophy, University of Georgia Library, and the Children's Home Society of Jacksonville, Fla. After providing relatively small legacies for certain of her relatives and for her employees and servants, she left the residue of her estate to her nephews by marriage, Frank H. Kenan and James G. Kenan. These wills, interrelated and for probate in North Carolina and New York, are extant and unchanged except for a relatively insignificant codicil.

In 1956 Mrs. Kenan created an *inter vivos* trust, naming William R. Kenan, Jr., A. R. MacMannis, Frank H. Kenan and James G. Kenan, trustees, and placing therein 120,000 shares of capital stock of the Standard Oil Company of New Jersey. She reserved to herself the income for life, retained the power to revoke the trust at will, and provided that if it were not revoked the trust property should belong to Frank H. Kenan and James G. Kenan at her death. The trust remains unmodified and unrevoked.

In May 1962 Mrs. Kenan was declared by a jury to be incompetent to manage her affairs and Frank H. Kenan was duly appointed trustee. He "knew nothing of the nature of her estate or its holdings until after . . . appointment as Trustee." He made a study of the estate, conferred with experts, and developed a plan under which it is now proposed to do the following things:

(1)   Out of the estate's 1964 income, which is estimated to be $4,-000,000 before taxes, to donate $606,600 to the following religious, charitable, cultural, medical and educational institutions: The Law Foundation of the Law Alumni Association of the University of North Carolina, the Graham Kenan Fund, the Medical Foundation of North Carolina, Wilmington College, the Catherine Kennedy Home of Wilmington, Wilmington Y. M. C. A. Building Fund, St. Stephen's Episcopal Church of Durham, Episcopal Diocese of Eastern Carolina, Boys Home of Lake Waccamaw, Episcopal High School of Alexandria, Va., Lees-MacRae College, Henry Morrison Flagler Museum of Palm Beach, Fla., United Fund of New Hanover County, N. C., Home Economics Foundation of the University of North Carolina at Greensboro, Episcopal Diocese of North Carolina for Vade Mecum, Home for the Aging of the Episcopal Diocese of North Carolina, Episcopal Diocese

of Western North Carolina for the Patterson School, Colonial Dames of America of Wilmington, Watts Hospital of Durham, Woodberry Forest School of Woodberry Forest, Va.

From 1955 to 1962 Mrs. Kenan had made charitable gifts each year in the amount of $8,160. The principal donees were St. James Episcopal Church of Wilmington, the Board of Education of Duplin County, the Memorial Presbyterian Church of St. Augustine, Fla., and the United Fund of New Hanover County. With court approval these annual gifts have been continued each year since 1962.

(2)  It is proposed to give most of Mrs. Kenan's stocks in four corporations, generally referred to as the Flagler System Companies, to the Sarah Graham Kenan Foundation (formed or to be formed) for charitable, religious, scientific, medical, educational, cultural and governmental purposes. All of the stock in those corporations is owned equally by Mrs. Kenan, her sister Jessie Kenan Wise, and her brother William R. Kenan, Jr. There is a quantity of preferred stock. Of the common stock 10% is voting and 90% is non-voting stock. To facilitate the gift of stock to the Foundation it is proposed to merge the four corporations and to issue stock in the merger in the same classes and proportions as before. The preferred stock and the non-voting common stock is to be given to the Foundation, the voting common stock is to be retained. The value of the gift is $13,000,000. The stock to be donated earns about $83,500 annually. The first $100,000 of income is to be given by the Foundation to the North Carolina Museum of Art Building Fund. Thereafter the donees will be chosen by the Foundation.

Mrs. Kenan's assets, other than the Flagler System stocks, are liquid and consist of listed stocks readily saleable at determined market value. The Flagler System stocks are not liquid; Mrs. Kenan owns only one-third and cannot sell a controlling interest in the businesses; if it becomes necessary or advisable to sell these stocks for the payment of estate taxes or for other purposes, they would have to be sold at a sacrifice. The purpose of this gift of stocks is to remove from the estate non-liquid assets which would require heavy estate taxes, and at the same time to retain the voting common stock and thereby prevent control of the Flagler businesses from passing outside the family. As explained by several witnesses, the control of the Flagler businesses has been a way of life for the Kenan family. However, if the bulk of the stock is given to the Foundation, it will not be necessary to dispose of the more liquid and more producive assets of the estate to pay estate taxes on the Flagler stocks.

(3)   It is proposed to make the 1956 *inter vivos* trust irrevocable, and during the life of Mrs. Kenan donate the trust income in fixed amounts or percentages to the following institutions: National Cultural Center, Memorial Presbyterian Church of St. Augustine, St. James Episcopal Church of Wilmington, St. Mary's Junior College, Graham Kenan Fellowship in Philosophy, University of North Carolina Library, Children's Home Society of Florida, Board of Education of Duplin County, and Sarah Graham Kenan Foundation. The value of the corpus of the trust is $10,000,000. The annual income is $365,000. The interests of Frank H. Kenan and James G. Kenan will become fixed and for tax purposes will be classed as gifts. Gift taxes are at a lower rate than estate taxes.

It is estimated that this three-fold plan will result in an increase, after payment of estate taxes, in excess of $4,000,000 in the amount the residuary legatees, Frank H. Kenan and James G. Kenan, will receive upon the death of Mrs. Kenan, if she lives three years or more after inception of the plan. If she dies earlier and the gift of the trust corpus to the beneficiaries is held to be in contemplation of death, there will still be an increment to the residuary legatees by reason of the plan of $1,600,000. The plan will, of course, greatly benefit the charitable and educational donees. Mrs. Kenan's gross and net annual incomes will be reduced. The gross income will be $449,000 less, the net income $96,000 less. However, her income will still be far in excess of her needs. She has had personal expenses of $33,000 per year for several years. It is estimated that she will not need in any year more than $45,000. She will still have a substantial surplus of income.

The General Assembly undertook to give an "assist" to the plan by the passage of certain enabling acts. S.L. 1963, chs. 111, 112 and 113 (codified as G.S. 35-29.1 to G.S. 35-29.16). Proceedings were instituted in 1963 by Frank H. Kenan, trustee, pursuant to these acts, to obtain approval of the plan. In that proceeding the plan was in some respects different from that outlined above. The superior court approved the plan presented. We heard an appeal at the Fall Term 1963, and reversed the superior court judgment. *In re Trusteeship of Kenan*, 261 N.C. 1, 134 S.E. 2d 85.

I agree that the principles stated in the majority opinion on the former appeal are correct. My chief concern has been and still is the constitutional questions involved, relating to the incidents of private ownership of property. These are discussed in the former opinion, and I agree that the principles are correctly stated. I refrain from a further general discussion here. The former opinion concluded that "a court may authorize a fiduciary to make a gift of a part of the estate

of an incompetent only on a finding, *on a preponderance of the evidence,* at a hearing of which interested parties have *notice, that the lunatic, if then of sound mind, would make the gift."* (Emphasis added). This is the law in North Carolina and any features of S.L. 1963, Chs. 111, 112 and 113, which are in conflict therewith are violative of due process and void.

The plan is well conceived, will serve the intended purposes, and while it will not benefit the incompetent, it will not be detrimental to her personally nor deny her adequate funds for her maintenance. The gifts to the many excellent charitable, medical, and educational institutions appeal to the sympathies of all. If the question were whether the plan is good, there would be no problem in reaching a decision. But the question is: Does it appear from a preponderance of the evidence that this is what Mrs. Kenan would do if she were competent?

The court below found as a fact and concluded as a matter of law "that Sarah Graham Kenan, if of sound mind, would make the gifts and property dispositions and take the action" now proposed by petitioner. Appellants except to this finding and conclusion on the ground that it is not supported by or in accord with the evidence, and is contrary to law. In my opinion the exception is well taken.

In determining what Mrs. Kenan would do if competent, we must look to the evidence and determine what she did do with respect to such matters when she was competent and what change of circumstances since she has become incompetent might have influenced her wishes with respect to the plan.

Mrs. Kenan usually donated each year $8,000 to religious and charitable causes. The largest extra donation she ever made was $24,000 or $25,000 to the St. James Church Building Improvement program. On other occasions she gave $20,000 to Thompson Orphanage and $5,000 to St. John's Episcopal Church. A person of her wealth undoubtedly was often solicited for charitable donations. While she gave sympathetic consideration to such solicitations, she was not an easy mark and was not inclined to make lavish gifts. It was suggested to her that her donation to the St. James Church building and improvement fund should be $50,000. She considered the matter and sent a check for $24,000 or $25,000. She later explained: "I thought that ($50,000) was too much for one person to give to the fund they were trying to raise, so I didn't give them that much." There is no evidence that she wished to donate or ever considered donating any sums to any of the following institutions to which petitioner would now have her contribute in large sums: The Law Foundation of the Law Alumni Association of the University of North Carolina, Medical Foundation of North Carolina, Wil-

mington College, St. Stephen's Episcopal Church of Durham, Boys Home of Lake Waccamaw, Watts Hospital of Durham, Woodberry Forest School, Lees-McRae College, Colonial Dames of America, National Cultural Center, and others. The evidence is that she did not wish to contribute to these — see her will which we will discuss later. It is proposed to give large sums to certain Episcopal schools and causes. In 1955, the year she made her will, Bishop Wright and another suggested to Mrs. Kenan that she donate $1,000,000 to the Episcopal Diocese of Eastern Carolina. She agreed to consider it. The request was repeated and William R. Kenan, Jr. was contacted. No gift was made, and nothing was included in her will for this purpose. During the depression the President of the University of North Carolina visited her and solicited a large sum to be used for a student loan fund. She made a nominal contribution, but established no loan fund. It is in evidence that she was charitably disposed but was "not one to initiate contributions." It is perfectly clear that when contributions were suggested or solicited, she reacted kindly but conservatively.

It is perfectly clear that she had in mind the causes to which she wished to contribute and the amounts to be contributed. She executed her will in 1955. It was prepared by Mr. Gray, a New York attorney who was an expert in estate planning. He had represented her and other members of the Kenan family for many years. She set out the charitable gifts she wished to make from her estate, the legatees are named above. Several were given as much as $100,000 each. The conclusion is inescapable that she considered this settled the matter of gifts as far as she was concerned. In this connection, we find a note of finality in the following provision in the will: ". . . it is my will that if any person named in this instrument as a beneficiary or legatee or devisee, or anyone interested therein shall at any time or in any manner institute or cause to be instituted, or shall aid, abet, connive or directly or indirectly promote the institution of any contest or proceeding or litigation, contesting or intending to contest, defeat or obstruct this instrument or any provision thereof, or the enforcement of such provision, then any and every such offending person or persons . . . shall, whether such contest, proceeding or litigation be successful or not, thereby forfeit all interest under this instrument." Mr. Gray, though an expert in the field of estate planning and Mrs. Kenan's long-time attorney, stated that he was not consulted by Mrs. Kenan with reference to an estate plan and he "did not offer or purport to offer her estate planning advice." The impression is left that Mrs. Kenan knew what she wanted and did not appreciate gratuitous suggestions and advice.

In 1954 James G. Kenan suggested to Mrs. Kenan the idea of creating a trust in certain of her stocks for his and Frank H. Kenan's benefit. Mrs. Wise had created an *inter vivos* trust. Mrs. Kenan said she would consider it. From time to time he pressed the matter. On one occasion he discussed it with William R. Kenan, Jr. Time passed. He decided not to press the matter further. Finally in 1956 Mrs. Kenan created the trust described above. James G. Kenan was not pleased with the terms, and, though he was closer to her than any other member of the family, he thought it better to leave the matter as it was. It can hardly be said that Mrs. Kenan, after deliberating two years, did not wish and intend to retain the income and the right to revoke.

As stated in the former opinion, Mrs. Kenan was fully aware of the impact of taxes, and that gifts to charity from income would mean an outlay on her part of only about 12% of the gifts. Mr. MacMannis, financial expert and long-time friend and business associate, prepared her tax returns and handled tax matters for her. He did not advise her to make gifts. She was unimpressed by manipulations for tax purposes. With respect to any change of circumstances, Mr. Gray stated: ". . . you could truthfully say that the same reasons existed five years ago for this reorganization as exists today . . . there was no change in the tax law that would make the reorganizations more compelling or more desirable at the present time than some years ago." The only perceptible change in circumstances is the increase in the value of her holdings. Her estate is now valued at $128,000,000. But the petitioner instituted this proceeding within a year after she was declared incompetent. There was very little time for circumstances to change. The naked truth is that her legatees expectant do not like the manner in which she organized and proposed to handle and dispose of her property. The changes in the Flagler Companies are merely a part of the plan, not something which has arisen because of emergency. It is true that the present voting trust will terminate soon, but there is no reason in law or otherwise why the trustee may not vote her stock, and in fact it is his duty to do so.

It is unthinkable that under the facts and circumstances disclosed by the record a person, who had never given for charity from income in any one year in excess of $50,000, would wish to give in one year for such purposes $1,000,000 from income and $13,000,000 from principal. Nor is there any evidence to support the proposition that she would desire to make a gift of $10,000,000 to relatives when she had already provided for them by will.

We now consider the evidence upon which petitioner relies for approval of the plan. First, there is the testimony of a psychiatrist who

never knew and never saw or examined Mrs. Kenan. This was purely a boot-strap operation. Frank H. Kenan testified that if Mrs. Kenan was competent he would go to her and explain all of the facts, would recommend that she take all of the actions proposed, would ask her brother William R. Kenan, Jr., and other relatives and all of the expert witnesses to give her the same advice, and that they would do so. He testified further: "Mrs. Kenan left all of her business matters, other than the running of her household, to her brother William Kenan." When her house was burned many years ago just before she was to depart for a European tour, she left to him the matter of reconstructing the house, and he attended to it. There was testimony that Mrs. Kenan and Mrs. Wise "relied 100% on William R. Kenan's judgment." Mr. William R. Kenan, Jr., filed an answer in the proceedings. The answer was prepared and taken to him for signature. It states that Mrs. Kenan always took his advice, and if she was competent he would advise her to take the proposed actions. The answer states: "I believe she would follow my advice and make such gifts." Mr. William R. Kenan, Jr., did not testify.

The good faith of these statements and allegations is not questioned. One wonders, however, whether William R. Kenan, Jr., advised her with respect to the will and the trust. She has had no more important business. If he did so advise her, things came out much differently than the actions now proposed. The best that can be said for the testimony upon which petitioner relies is that it consists of conclusions supported by very little or no factual evidence. It comes to this: If Mrs. Kenan were now competent everyone to whom she might listen would go to her and try to prevail upon her to take the actions proposed, and they believe she would yield and take such actions. I am unwilling to place the property rights of incompetents on such tenuous basis. Furthermore, it does not meet the test of proof by preponderance of the evidence of what the incompetent would do if competent. There is no case in the books which countenances such a wide departure. The majority opinion ignores the court's duty with regard to the property of incompetents. However good and appealing the plan may be in this case, the decision of today will be the law tomorrow. It is an invitation to replan and give away portions of every incompetent's estate in this jurisdiction in accordance with the wishes of expectant heirs, devisees, legatees, settlees, and organized charities. For equity to decree such gifts from an incompetent's estate, there should be a showing that the gifts are consistent with donor's wishes as evidenced by donor's words and conduct when competent. It is not what others desire and would urge; it is what donor would normally do if competent.

With respect to the trust, the majority opinion overrules what has heretofore been established law in this jurisdiction. The trust instrument is a contract and we are varying its terms without legal justification. In *Cocke v. Duke University,* 260 N.C. 1, 131 S.E. 2d 909, *Rodman, J.,* speaking for the Court said:

" '. . . the power of the court should not be used to direct the trustee to depart from the express terms of the trust, except in cases of emergency or to preserve the trust estate.' *Penick v. Bank,* 218 N.C. 686, 12 S.E. 2d 253. 'It must be made to appear that some exigency, contingency or emergency has arisen which makes the action of the court indispensible to the preservation of the trust and protection of the infants.' *Redwine v. Clodfelter,* 226 N.C. 366, 38 S.E. 2d 203. 'To invoke the jurisdiction of a court of equity the condition or emergency asserted must be one not contemplated by the testator, and which, had it been anticipated, would undoubtedly have been provided for; and in affording relief against such exigency or emergency, the court must, as far as possible, place itself in the position of the testator and do with the trust estate what the testator would have done had he anticipated the emergency.' *Cutter v. Trust Co.,* 213 N.C. 686, 197 S.E. 542. 'It is not the province of the courts to substitute their judgment or the wishes of the beneficiaries for the judgment and wishes of the testator.' *Carter v. Kempton,* 233 N.C. 1, 62 S.E. 2d 713."

See also *Reynolds v. Reynolds,* 208 N.C. 578, 623, 182 S.E. 341. There is no emergency in the instant case which threatens the trust, nor does anyone contend that there is.

The appellants raise the question of denial of trial by jury. It does not arise here for jury trial was waived except on the issue of the permanent incompetency of Mrs. Kenan.

With reference to the jurisdiction of the court with respect to some of the parties not properly served with summons, suffice it to say that if there are parties who are not properly before the court by reason of failure of service, and if such parties have a vested or contingent interest which has been impaired, they may hereafter assert their rights and have their day in court.

I vote to reverse.

BOBBITT, J., joins in dissenting opinion.