No. 40,989

JOHN A. PARKINSON and ELIZABETH S. NAVAS, Executors of the Last
Will and Testament of Louise C. Murdock, Deceased, *Appellees,*
v. ROLAND P. MURDOCK, et al., *Appellants.*

(332 P. 2d 273)

Opinion filed December 6, 1958.

*Eugene L. Pirtle,* assistant city attorney for the city of Wichita, argued the
cause, and *Fred W. Aley,* city attorney for the city of Wichita, was with him
on the briefs for appellants.

*Eugene G. Coombs,* of Wichita, argued the cause, and *George D. McCarthy,*
of Wichita, was with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was a proceeding by a trustee for instructions
in certain matters relative to the administration of a testamentary
trust, and for authorization to make certain expenditures from trust
funds. The beneficiary of the trust, the city of Wichita, filed an
application pursuant to G. S. 1949, 60-3127, for declaratory judg-
ment. The trial court overruled in part and allowed in part both
the trustee's motion and the city's application. From the rulings
adverse to it, the city appeals.

Louise C. Murdock of Wichita died in 1915 leaving a will provid-
ing for the disposition of all her property. The will made provisions
for her mother, sister and son during their lifetimes and then pro-
vided:

". . . In case of the death of my son and sister and mother, all of my
property held by my executors shall be put into a Trust Fund to be administered
by them, and the interest accruing from this fund shall be used for the buying

of an Art Collection for the City of Wichita providing a suitable place shall be provided for the housing of this collection, and it shall be called the Roland P. Murdock collection.

"The planning of this collection shall be in charge of Miss Elizabeth Stubblefield who will consult with authorities in such matters and the preference be given to American painters, potters, sculptors and textile weavers. If the City of Wichita does not furnish a suitable place for the development and housing of this collection, then the money accruing in this trust fund shall be used for the maintenance of scholarships in Baker University, Baldwin, Kansas, and Southwestern College, Winfield, Kansas, worthy intelligent and industrious young men to be the beneficiaries. The Presidents of these two schools and one layman to have the choosing of these men."

On April 27, 1915, the will was duly admitted to probate in Sedgwick county, Kansas.

On January 2, 1918, the district court found that the will, after providing life tenancies for the testator's son and sister (the mother being then deceased) created certain public, charitable trusts in that the income from the trust fund was to be used for the buying of an art collection for the city of Wichita on the condition the city provide suitable housing, and that Parkinson and Stubblefield (now Navas) were to be the trustees of this perpetual trust. The court retained jurisdiction over the trust.

On October 7, 1937, the trustees reported to the district court that the two life beneficiaries, the testator's son and sister, were deceased; that a certain public, charitable trust had been created by the will of Louise C. Murdock wherein income from the trust was to be applied toward the purchase of an art collection for the city of Wichita and that the time had now arrived for the determination and establishment of the corpus of the trust so that the trustees could continue to administer it. In their report the trustees represented that the city of Wichita had constructed an Art Museum building for the purpose of housing the Roland P. Murdock Collection, and stated to the court that in their opinion the building was suitable under the terms of the will.

The district court found the trustees' verified petition to be true, and that the net income was to be applied in the following manner:

a. To the payment of costs and expenses of the administration of the estate.

b. The preservation of the trust property to avoid depreciation and obsolescence.

c. The net proceeds after the payments above were to be used for the buying of an art collection for the city of Wichita and the planning of the collection should be in charge of Mrs. Navas, co-trustee of the estate.

Also, that the beneficial interest of the trust vested in the *cestui que* trust, the city of Wichita.

The trust was operated under this order until March 30, 1939, at which time the trustee Elizabeth S. Navas, applied to the district court for additional compensation in planning and making selections incidental to the purchase of the art collection for the city of Wichita. Since the will had made no specific provision for the compensation of Mrs. Navas, the court, upon this application, allowed as her fee in the planning and purchasing of the collection the sum of 15 percent of the actual amount paid for the works of art that she purchased. This fee was in addition to the annual fee allowed to the trustees for the administration of the trust *res.*

In 1939 Mrs. Navas, as trustee, began purchasing paintings and objects of art for the Roland P. Murdock Collection and has continued to purchase such objects up to the present time.

The plan of the collection has been developed around the central core of American Art, making it one of the outstanding collections of American paintings. There are now 142 works of art in the collection which had an acquisition cost of $241,746, and the appraised value as of January, 1958, was $413,640.50.

On October 12, 1956, John A. Parkinson, co-trustee, died. When Mrs. Navas commenced this proceeding she was the sole trustee.

On January 28, 1957, the trustee filed her motion for direction of the court in matters relative to the administration of the trust, and for the expenditure of trust funds on certain items. She asked the court to (1) authorize the employment of a conservator to inspect the paintings and works of art in the collection and to re-inspect the collection every two or three years; (2) appoint her as the sole trustee of the trust because of the death of John Parkinson; (3) authorize the employment of a certified public accountant to make necessary audits and prepare accountings to be submitted to the court; (4) authorize an increase in the trustee's fee from $1,800 to $3,600 per annum, and (5) authorize the expenditure of trust funds for the purpose of preparing and publishing a catalogue describing the works of art in the Roland P. Murdock Collection. Authority was further requested for the trustee, Mrs. Navas, to supervise and assist in the preparation of the catalogue. The cost of the catalogue was estimated to be approximately $10,000, and in addition the trustee requested $2,500 for her work and assistance in preparing it. The trustee further requested authority to expend $125 on the re-printing of an article appearing in the magazine "Art in America,"

and for an allowance to pay attorneys' fees for their work and representation of the estate.

On February 13, 1957, the city of Wichita as beneficiary under the trust, filed an application for a declaratory judgment and alleged that an actual controversy existed between the trustee and the beneficiary as to the interpretation of the will of Louise C. Murdock, which manifested in the trustee's motion to expend moneys from the principal of the trust for purposes other than "the buying of an art collection for the City of Wichita" as provided in the will. The prayer was that the district court define the rights of the trustee and the rights and duties of the city of Wichita in the custody and care of the Roland P. Murdock Collection; that a successor co-trustee be appointed who was a resident of Sedgwick county due to the non-resident status of the surviving trustee, and that the trustee be directed to deliver to the city of Wichita, or account for, all documents of title and other indicia of ownership of the paintings and works of art in the Murdock Collection.

In her answer the trustee denied that a controversy existed as to the interpretation of the will which manifested itself in her motion pending before the district court. She also denied she sought to expend moneys from the principal of the trust for purposes contrary to the terms of the will, and alleged that all requests in her motion to expend moneys were authorized by the terms of the will which provided that she should be in charge of the planning of the collection. She further alleged that all documents of title and other indicia of ownership of the works of art had been made available to the city and the city had photostated them.

At the trial the trustee testified that she considered the inspection of the works of art by a conservator employed by her to be a part of the "planning" of the art collection; that his report would be made to her and to the Board of the Art Museum; that the proposed catalogue would show only the Murdock Collection, which comprised 90 percent of the works of art in the museum, and none of the other works of art in the museum would be included; that she had already made preliminary plans for the catalogue and had the general outline in mind and that such a catalogue would be a work of art itself if properly prepared. She further testified that whether or not a catalogue was a work of art was a matter of opinion. Further, that all documents of title and indicia of ownership of the works of art had been made available to the city and the city had kept them long enough to photostat them.

William Nix, acting chairman of the Wichita Art Museum Board, testified that the director of the museum had informed him it would be advisable to employ a conservator to inspect the paintings and objects of art; that there had been several meetings with representatives of the trustee for the purpose of asking for an order of the court to allocate a sum of money to be donated to the city for that purpose; that the Murdock Collection comprised the major portion of the art collections in the museum; that under the Resolution of the City Commissioners the trustee had no authority whatsoever in the management of the collection and that, in his opinion, the duties of Mrs. Navas were to administer the estate and acquire paintings with trust funds; that he thought all works of art in the museum should be catalogued, which would enhance the value of the collections, but that such a catalogue should not only recognize the Murdock Collection but should recognize the city as well.

Carroll Hogan, Museum Director of the Wichita Art Museum, testified that a regular program of examination of the works of art by a conservator should be carried on; that he would not regard the preparation of a catalogue as a part of the planning for the purchase of an art collection but that such a catalogue would be desirable, and that the preparation of it would necessarily require the expert knowledge of Mrs. Navas. He objected to a catalogue of just the Murdock Collection and stated that it should reflect the Wichita scene and its role as being an important American art center.

The district court made the following findings of fact and conclusions of law:

1. The city of Wichita as beneficiary under the trust had the duty to provide a suitable place to house the collection and had the further obligation to continue to provide suitable conditions and maintain the same so long as the trust estate existed. The court concluded as a matter of law that the trustee had an obligation to ascertain from time to time if the beneficiary was continuing to maintain such suitable place; that with respect to that obligation, she had the implied power to use whatever means necessary and reasonable to make that determination, and granted the request to employ, out of trust funds, a conservator to inspect the collection.

2. That the cataloguing of the collection was as vital to and as much a part of the collection as an art piece itself; that the collection would be enhanced in value by the catalogue and that the same would be beneficial not only to the city of Wichita but to all Universities and Art Museums throughout not only the United States, but all art centers wherein such catalogues can and will be placed. Pursuant to this finding the court authorized the trustee to expend up to $10,000 in the publishing of the catalogue.

3. That a resident of Sedgwick county should be appointed co-trustee and that the Honorable Garner Shriver was a suitable person to be appointed.

4. That Mrs. Navas should be granted an additional $2,500 as compensation to her for her work on the catalogue.

The city of Wichita has appealed only from those portions of the judgment relating to the sums of money granted the trustee for the hiring of a conservator and for the preparation and publication of a $10,000 catalogue and the allowance of $2,500 as compensation to Mrs. Navas for her work thereon.

The city of Wichita contends the expenditures authorized by the district court are not expressly or impliedly authorized by the terms of the will. A careful reading of the will reveals that there are no express provisions in that document which would authorize the allowance of these expenditures from the trust funds, and there remains the question, is there implied authority?

The purpose of the trust as set up by the will was to provide an art collection for the city of Wichita, not for just a term of years, but for all time to come. The intention of the testator, as expressed in the will, was to provide for the purchasing of objects of art to be located in the city of Wichita and preserved in a suitable building so they could be enjoyed forever by the people of that community. It is essential to the fulfillment of that purpose that the paintings and objects of art be properly housed and cared for. The objects of art, once purchased, were not to be so improperly housed and cared for as to result in a deterioration thus rendering them useless and no longer of value. The providing of a suitable place to house the collection by the city was a condition precedent to the creation of the trust in favor of the city. After the trust was set up the city of Wichita had the continuing obligation to maintain suitable housing for the objects of art so long as the trust estate existed.

The trustees, of course, have the duty to carry out the intention of the creator of the trust. One of those duties is to properly select and purchase objects of art. As a necessary incident to the carrying out of the expressed intention to provide an art collection that would last throughout the years, the trustees also have the duty to see that the objects of art purchased are properly housed and cared for so as not to deteriorate after a relatively short period of time. To achieve this end, the trustees have the power, with the approval of the court, to use all reasonable and necessary means to ascertain the condition of the objects of art. In 4 Scott, Trusts, § 380, it is said:

"The trustees of a charitable trust, like the trustees of a private trust, have such powers as are conferred upon them in specific words by the terms of the

trust or are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust. . . . The fact that a charitable trust may continue for an indefinite period may have the effect of giving the trustees more extensive powers than they would have in the case of a private trust, which is of limited duration."

We think that the employment of an expert, a conservator, to inspect the objects of art to determine if they are being properly housed and cared for is a necessary and appropriate exercise of power conferred upon the trustees by the terms of the decedent's will. The ruling of the district court that a conservator be employed should not be disturbed.

The district court also found that a cataloguing of the collection was "as vital to and as much of the Collection as an art piece itself"; that the collection would be enhanced in value by the catalogue, and that such a catalogue would be beneficial. Again, there is no abuse of discretion. Mrs. Navas testified that the catalogue would help in the planning of the collection; that it would also, to a certain extent, help in the acquisition of future objects of art for the collection in that it would serve as a means of publicity. The probable result would be that desirable objects of art which were for sale would be offered to the collection. As such, the catalogue would be a part of the "planning" and "buying" of the Roland P. Murdock Collection.

We do not think the district court abused its discretion in allowing $2,500 to Mrs. Navas for her work in preparing the proposed catalogue. Someone must do the work, and due to her intimate knowledge of the collection Mrs. Navas is as capable as anyone, if not more so. Indeed, Mr. Hogan testified that the catalogue could not be prepared without her expert assistance.

It not being made to affirmatively appear that the district court erred in any respect, the judgment is affirmed.

It is so ordered.