WACHOVIA BANK AND TRUST COMPANY, N. A., JOHN C. WHITA-KER AND L. D. LONG, TRUSTEES UNDER THE WILL OF MRS. KATE G. BITTING REYNOLDS, DECEASED, PETITIONERS v. ROBERT MORGAN, ATTORNEY-GENERAL OF THE STATE OF NORTH CAROLINA; ST. JOSEPH'S HOSPITAL, INC.; CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY (FORMERLY CHARLOTTE MEMORIAL HOSPITAL); CITY OF WINSTON-SALEM; NORTH CAROLINA BAPTIST HOSPITALS, INC.; REX HOSPITAL; DUKE UNIVERSITY; WESLEY LONG HOSPITAL, INC.; HICKORY MEMORIAL HOSPITAL, INC.; HUGH CHATHAM MEMORIAL HOSPITAL, INC.; PASQUOTANK COUNTY; GOOD SAMARITAN HOSPITAL, INC.; SOUTHEASTERN GENERAL HOSPITAL (FORMERLY BAKER-THOMPSON MEMORIAL HOSPITAL, INC.); TRUSTEES OF LINCOLN HOSPITAL; ROCKY MOUNT SANITARIUM, INC.; S. D. McPHERSON, TRADING AS McPHERSON HOSPITAL; LEXINGTON MEMORIAL HOSPITAL, INC.; J. C. CASSTEVENS, TRADING AS CASSTEVENS CLINIC; THE ASHEVILLE ORTHOPEDIC HOME, INC.; PROVIDENCE HOSPITAL (FORMERLY PETRIE HOSPITAL, INC.); ANSON COUNTY HOSPITAL (FORMERLY THE ANSON SANITORIUM); FORSYTH COUNTY; CITY OF RALEIGH; WAKE COUNTY; CUMBERLAND COUNTY; PRESBYTERIAN HOSPITAL, INC.; WATTS HOSPITAL; SAMPSON COUNTY MEMORIAL HOSPITAL, INCORPORATED; ONSLOW MEMORIAL HOSPITAL, INCORPORATED; NEW HANOVER MEMORIAL HOSPITAL, INC.; HENDERSON COUNTY (OPERATOR OF MARGARET R. PARDEE MEMORIAL HOSPITAL); WILSON MEMORIAL HOSPITAL, INC.; MEMORIAL MISSION HOSPITAL OF WESTERN NORTH CAROLINA, INCORPORATED; C. J. HARRIS COMMUNITY HOSPITAL, INCORPORATED OF SYLVA, NORTH CAROLINA; MOREHEAD MEMORIAL HOSPITAL; NORTH CAROLINA HOSPITAL ASSOCIATION, RESPONDENTS

No. 109

(Filed 30 July 1971)

**1. Trusts § 4— modification of charitable hospital trust — cy pres statute**

The superior court had authority, under the Charitable Trusts Administration Act, to order a change in the administration of a charit-

able hospital trust which would as nearly as possible fulfill the settlor's charitable intention to provide medical and hospital services for needy patients, where payments to hospitals under the original trust provisions had been benefitting the government and the paying patient rather than the non-paying patient, and where the trust provisions contained no alternative plan for the administration of the trust. G.S. 36-23.2.

**2. Trusts § 4— charitable hospital trust — creation of advisory board and staff — payment out of trust income**

The superior court, upon approving the creation of an advisory board and staff to assist the trustees of a charitable hospital trust, properly determined that the reasonable expenses of the advisory board and its staff were to be paid from the trust income rather than from the trustees' commissions, where (1) the settlor of the trust had made specific provision in her will for the trustees' compensation, which amounted to $45,000 in the most recent fiscal year; (2) the reasonable expenses for the advisory board and staff will amount to $33,825 a year; (3) the payment of the advisory board's expenses out of the trustees' commissions would obviously defeat the intention of the settlor with respect to the commissions; and (4) the creation of the advisory board did not relieve the trustees of their ultimate responsibility for the proper administration of the trust. G.S. 28-170; G.S. 36-23.2.

**3. Trusts § 4— charitable hospital trust — employment of skilled personnel**

The trustees of a charitable hospital trust could properly employ skilled personnel to aid them in the management of the trust.

APPEAL by respondent Attorney General from *Lupton, J.,* 25 January 1971 Session FORSYTH Superior Court, transferred to this Court for initial appellate review by virtue of the general transferral order of 31 July 1970, entered pursuant to G.S. 7A-31(b) (4).

On 26 July 1934 Mrs. Kate G. Bitting Reynolds executed a will, Section Five of which provided in part:

"All the Rest, Residue and Remainder of my estate . . . I give, devise and bequeath:

"To my trustees hereinafter named, in trust, to pay one-fourth of the net income therefrom for the benefit of the poor and needy of the City of Winston-Salem and of the County of Forsyth, North Carolina, . . . and to pay three-fourths of the net income therefrom to the Hospitals located in the State of North Carolina, for the benefit of Charity patients, and said trustees shall pay such income quarterly to said hospitals upon the basis of the average

number of charity patients cared for therein during each day of the immediately preceding period of three months. Any hospital participating under the provisions of this Will except those benefitting from specific bequests shall make a monthly report to my trustees showing the number of charity patients cared for during each day of the month, and my trustees shall be the sole judge as to the eligibility to receive benefits hereunder of any and all hospitals, and the decision of my trustees in respect thereto shall be final."

Wachovia Bank and Trust Company, William N. Reynolds, John C. Whitaker, and L. D. Long were named trustees.

Mrs. Reynolds died in 1946, and in 1947 the trustees brought a suit for construction of Section Five of the will, and for advice and instructions concerning the rights and duties of the trustees under that section. The Superior Court of Forsyth County entered judgment defining the rights and duties of the trustees. This judgment was affirmed by the Supreme Court of North Carolina in *Trust Co. v. McMullan, Attorney General*, 229 N.C. 746, 51 S.E. 2d 473. The judgment in that case provided for the retention of the case on the inactive docket of the court, with leave granted to the trustees or other interested parties to petition the court for further orders.

The trustees continued to administer the trust in accordance with the terms of the will and the decision of the court until 18 August 1969. On that date the trustees filed a petition alleging changed circumstances and conditions and requesting that the trustees be given additional orders and instructions for the administration of the hospital trust. On 4 May 1970, after a hearing in the Superior Court of Forsyth County, judgment was entered in favor of the petitioners, granting petitioners the instructions requested. On appeal, the judgment of the Superior Court was reversed by the Court of Appeals, without prejudice to the trustees to re-apply for relief on a theory more consistent with the facts shown by the evidence. *Trust Co. v. Morgan, Attorney General*, 9 N.C. App. 460, 176 S.E. 2d 860.

After the decision of the Court of Appeals, the petitioners amended the petition for relief, specifically alleging the insignificance of the trust income when paid in accordance with the direction of the will and alleging particularly that the trust income, if properly applied, could have significant impact upon

the health and medical care of the needy people in North Carolina. The Attorney General filed an answer to the amended petition admitting that changed circumstances warranted a change in the use of the trust income, but denying that the trustees were entitled to reimbursement from trust funds for the added cost in administering the trust.

On 14 December 1970, at a hearing before Judge Lupton in the Superior Court of Forsyth County, new evidence was presented through the testimony of seven witnesses and affidavits of five affiants. Five of these witnesses and all the affiants had had extensive experience in the hospital or health care field. Their uncontradicted evidence showed that the trust had become impractical of fulfillment because of changed conditions not anticipated by the testatrix. From 26 July 1934, the date Mrs. Reynolds executed her will, the percentage of charity-patient days of hospital care had declined from 53.6 percent of the total days of hospital care to 12.4 percent, and the cost of patient care had risen from $3.03 per day to $50 per day in 1969. In 1934 approximately 24 percent of the hospital beds in the state were located in "for-profit" hospitals, whereas in 1969 only 2.4 percent of the beds were in "for-profit" hospitals. In 1969 approximately 76.8 percent of the people of the State were covered by hospitalization insurance, whereas in 1934 there was little, if any, such coverage. Increases in the extent and complexity of services available and increases in governmental assistance to hospitals and needy persons in North Carolina stood in marked contrast to the situation as it existed in 1934. Furthermore, the evidence indicated that the trust payments to hospitals were placed in the general funds of recipient hospitals and not expended exclusively for needy patients. Thus, the actual beneficiaries of the trust were the hospitals, government, and paying patients—not needy patients—and that the payments of $3.16 per charity-patient day for the most recent year were insignificant and ineffectual, and did not induce hospitals to accept needy patients.

On 25 January 1971 Judge Lupton entered judgment finding that there had been significant changes in the ratio of charity patients to paying patients, in the cost of hospital care, in the ownership of hospitals, in the establishment of hospital insurance programs, in the services provided by hospitals, and in the assumption of public responsibility for the care of charity

patients, as evidenced by the increase in direct governmental
assistance to hospitals, direct subsidies to needy individuals
through programs such as Medicare, Medicaid, veterans' bene-
fits, workmen's compensation, and similar programs. The
court further found that the payment of the hospital trust in-
come under the formula prescribed in the will was impractical
and did not reach or assist needy persons; that in order to
effectively carry out the objectives of Mrs. Reynolds' will, it
would be necessary to amend the plan or formula specified in
the will and to prescribe discretionary powers for the trustees
over the application of trust income so that such income could
be so directed as to accomplish the charitable intent of the
testatrix; and that the normal anticipated income of the hospital
trust of approximately $800,000 annually, if properly applied,
was sufficient to have significant impact in providing health
and medical care to the needy people in North Carolina. The
court further found that providing health and medical needs
was a constantly changing and complex task, and that proper
administration of the trust under these circumstances would
require the employment of professional assistance and would
impose upon the trustees substantial additional duties and re-
sponsibilities not contemplated by the testatrix at the time of
executing the will, nor contemplated by the trustees at the
time they entered upon the administration of the trust; that
to perform these new duties the trustees should be authorized to
establish an Advisory Board capable of providing informed
guidance to the trustees and to employ a qualified person to
seek uses for the trust income, study, evaluate, and coordinate
proposed grants, and to establish and implement procedures
for following up to ascertain that payment of trust income is
used for the purposes intended.

Based upon these findings and conclusions, the court ad-
judged that the trustees of the hospital trust, by reason of the
changed circumstances and conditions, were no longer required
to make payments of income from the hospital trust to hospitals
located in North Carolina for the benefit of charity patients,
but the trustees were authorized to use the income from the
hospital trust, including accumulated income, in such manner
as the trustees, in their discretion, might from time to time
deem best to serve the health and medical needs of needy people
of North Carolina. The court further authorized the trustees

to set up an Advisory Board and to employ a person to assist in devising and executing new programs to effectuate the charitable intent of Mrs. Reynolds. The trustees were authorized to pay reasonable compensation to the members of the Advisory Board and to the person so employed, and to provide for reasonable and necessary office and travel expenses for such person out of trust income.

The trustees were directed to prepare and furnish annually to the Attorney General of the State of North Carolina a report showing receipts and disbursements of trust income. The cause was retained with leave for any interested party upon ten days' notice to apply for further orders.

On 25 January 1971 Judge Lupton entered an order authorizing the trustees to expend $33,825 for the administration of the new plan for the first year, and such sums as might be reasonable in subsequent years, with the provision that sums which did not exceed 3½ percent per annum of the gross income of the hospital trust shall be deemed reasonable expenses, chargeable against trust income.

From the judgment entered by Judge Lupton on 25 January 1971 and the supplemental order entered by Judge Lupton on the same date approving the added expenditures by the trustees from trust income, only the Attorney General appealed. The North Carolina Hospital Association, one of the respondents, filed a brief stating in conclusion: "The judge's findings of fact are supported by substantial competent evidence and the conclusions of law and judgment are supported by such findings. Therefore, the findings are conclusive on appeal and the judgment should be affirmed."

*Attorney General Robert Morgan and Assistant Attorney General Mrs. Christine Y. Denson for Attorney General Robert Morgan, respondent appellant.*

*Hollowell and Ragsdale, by Edward E. Hollowell and Richard B. Conely, for North Carolina Hospital Association, respondent appellee.*

*Womble, Carlyle, Sandridge & Rice by W. P. Sandridge, Jr., for petitioner appellees.*

Trust Co. v. Morgan, Attorney General

MOORE, Justice.

Only one question is presented by this appeal: Is it proper for the trustees to take the additional cost of administration out of the trust income rather than out of the commissions allowed the trustees under the terms of the will?

[1] Although there is no appeal from the judgment of Judge Lupton dated 25 January 1971 on the question of whether *cy-pres* is proper, the Superior Court had ample authority to alter the administrative provisions of the trust to accomplish the purpose of the testatrix. The *cy-pres* doctrine is the rule which courts of equity use when a gift given for a particular charitable purpose cannot be applied according to the exact intention of the donor. In such cases, the court will direct that the gift be applied as nearly as possible in conformity with the original purpose and intent of the testator. *Cy-pres* literally means "as near as possible." See generally, IV Scott on Trusts § 399 (3d ed., 1967) [hereinafter cited as Scott].

Before 1 October 1967 North Carolina rejected the *cy-pres* doctrine as such, while upholding modification of charitable trust provisions under the court's general equitable power to supervise trust administration. *See* Note, *Cy-pres Enacted in North Carolina,* 46 N.C.L. Rev. 1020 (1968). As Justice Ervin stated in *Watts Hospital v. Comrs. of Durham,* 231 N.C. 604, 58 S.E. 2d 696:

> "Equity looks at substance, and not form. When subsequent changes in conditions not anticipated by the creator of a trust threatened the destruction of the trust and the loss of the trust estate, a court of equity has power to modify the terms of the trust to the extent necessary to preserve the trust estate and to effectuate the primary purpose of the creator of the trust. *Hospital v. Cone, ante,* 292, 56 S.E. 2d 709; *Redwine v. Clodfelter,* 226 N.C. 366, 38 S.E. 2d 203; *Duffy v. Duffy,* 221 N.C. 521, 20 S.E. 2d 835; *Penick v. Bank,* 218 N.C. 686, 12 S.E. 2d 253; *Cutter v. Trust Co.,* 213 N.C. 686, 197 S.E. 542; 54 Am. Jur., Trusts, Sec. 284. This equitable jurisdiction resided in the court below; for the Superior Court possesses all of the powers exercised by it as a court of equity prior to 1868. McIntosh: North Carolina Practice and Procedure in Civil Cases, section 62."

The 1967 Charitable Trusts Administration Act, now codified as G.S. 36-23.2 provides:

"Charitable Trusts Administration Act.— (a) If a trust for charity is or becomes illegal, or impossible or impracticable of fulfillment or if a device *(sic)* or bequest for charity, at the time it was intended to become effective is illegal, or impossible or impracticable of fulfillment, and if the settlor, or testator, manifested a general intention to devote the property to charity, any judge of the superior court may, on application of any trustee, executor, administrator or any interested party, or the Attorney General, order an administration of the trust, devise or bequest as nearly as possible to fulfill the manifested general charitable intention of the settlor or testator. In every such proceeding, the Attorney General, as representative of the public interest, shall be notified and given an opportunity to be heard. This section shall not be applicable if the settlor or testator has provided, either directly or indirectly, for an alternative plan in the event the charitable trust, devise or bequest is or becomes illegal, impossible or impracticable of fulfillment. However, if the alternative plan is also a charitable trust or devise or bequest for charity and such trust, devise or bequest for charity fails, the intention shown in the original plan shall prevail in the application of this section.

"(b) The words 'charity' and 'charitable,' as used in this section shall include, but shall not be limited to, any eleemosynary, religious, benevolent, educational, scientific, or literary purpose."

This section lends statutory sanction and authority to the long-established policy adopted by this Court that gifts for charitable purposes should not fail because of unforeseen events, but that the Court should assist in carrying out charitable purposes.

In the present case the uncontradicted evidence shows that funds received by the various hospitals under the hospital trust fund in the will are used for general hospital purposes and not for charity patients, and such income has the effect of only subsidizing the government by reducing the share which the government must contribute, or of subsidizing private patients. The contribution from this trust under the present plan benefits

(1) government, and (2) the paying patient, but fails to bene-
fit the non-paying patient. Since the trust provisions no longer
serve the intended purpose of providing medical and hospital
services to people who cannot afford to pay for such services,
and since the will itself contained no alternative plan, the court
could order an administration of the trust which would as
nearly as possible fulfill the general charitable intention of the
testatrix. G.S. 36-23.2; *Watts Hospital v. Comrs. of Durham,
supra.*

[2] The Attorney General, as provided by G.S. 36-23.2, ap-
peared in the proceeding as a representative of the public inter-
est, and took no exception to the provisions of the judgment
which called for an application of the *cy-pres* doctrine to Mrs.
Reynolds' will, nor did he take issue with those portions of the
judgment which provide that the trustees should have available
an Advisory Board and an administrative staff, and that both
the staff and committee should be paid reasonable salaries and
expenses. The Attorney General only questions that portion of
the judgment authorizing the deduction of these additional ex-
pense items from trust income.

Mrs. Reynolds' will was executed 26 July 1934. She died on
23 September 1946. Mrs. Reynolds, as well as her husband, was a
person of means. The value of her trust estate as of 7 Decem-
ber 1970 was $24,623,941.25. In her will Mrs. Reynolds pro-
vided in Section Seven 5:

> "5. As compensation for its services as one of my trus-
> tees, the Wachovia Bank & Trust Company shall retain no
> commission on the principal but shall retain 5% of the gross
> annual income up to $10,000 and 2½% of the gross annual
> income in excess of $10,000. As compensation for their
> services, the individuals serving as trustees hereunder shall
> receive annually, to be divided between or among them, a
> sum equivalent to the compensation received and retained
> by the Wachovia Bank & Trust Company for its services
> as trustee, which compensation to said individuals shall be
> in addition to and not in diminution of that of the
> Wachovia Bank & Trust Company."

The three individual trustees named by her were her hus-
band, William N. Reynolds; her nephew, John C. Whitaker;
and her secretary, L. D. Long. The will provided in case of the

death of any individual trustee that the remaining individual trustee or trustees, together with the corporate trustee, should continue to discharge their duties. W. N. Reynolds is now dead. John C. Whitaker and L. D. Long now serve as individual trustees with Wachovia Bank and Trust Company. Upon the death of the individual trustees, Wachovia Bank and Trust Company will continue to serve as sole trustee.

G.S. 28-170 details the commissions allowable to executors, administrators, testamentary trustees, and other fiduciaries, limiting in general the compensation of such fiduciaries to 5 percent of the receipts and disbursements. The statute provides, however, that " . . . nothing in this section shall prevent the clerk allowing reasonable sums for necessary charges and disbursements incurred in the management of the estate."

In this case the trustees have received only the compensation provided for by Mrs. Reynolds. For the year ending 2 October 1970 the corporate trustee received the sum of $23,166.08; the individual trustees received $22,518.53. In addition to the hospital trust, the will provided that one-fourth of the net income from the trust was to be used for the benefit of the poor and needy of the city of Winston-Salem and the County of Forsyth, North Carolina. The trustees have devoted substantial time to the performance of their duties as trustees in disbursing this part of the trust income.

The Attorney General contends that for some 15 years or more the trustees have been handsomely rewarded for very little effort expended in connection with this trust, and, therefore, any additional cost incurred in the administration of the trust should be deducted from their commissions. The answer to this contention is, of course, that Mrs. Reynolds provided for this compensation in her will. She knew the duties imposed upon the trustees by the terms of the will and the compensation which she desired to pay for the performance of those duties. She had the right to prescribe any compensation she wished. *Trust Co. v. Waddell*, 237 N.C. 342, 75 S.E. 2d 151. It should be noted that the corporate trustee received only 5 percent commission on the first $10,000 of trust income and 2½ percent commission on all income above $10,000, or approximately one-half that authorized by statute. It should also be noted that her personal trustees included her husband, her nephew, and her

long-time secretary, and that it was her desire that they share in the commissions paid for life.

Ordinarily, where the will expressly stipulates the compensation to be allowed an executor, the executor, by qualifying, is deemed to have accepted a bargain and is bound thereby even though the will stipulates compensation in a sum less than the 5 percent maximum allowed by statute. *Lightner v. Boone*, 221 N.C. 78, 19 S.E. 2d 144. In the instant case, upon the death of the remaining individual trustees, Wachovia Bank and Trust Company will continue to serve as sole trustee and will then only be entitled to the commission provided in the will for the corporate trustee. None of the trustees are now asking for additional compensation. They are only asking that necessary expenses, which will be incurred due to changed conditions and changed duties, be paid from trust income rather than from commissions provided for the trustees by the terms of the will. For the year ending 2 October 1970 the trustees received commissions of approximately $45,000. The court has found that due to a change in conditions it will be necessary for the trustees to create an Advisory Board and employ an individual to assist the trustees in the administration of the trust. The court has further found that a reasonable annual allowance for the expense to be incurred by this Advisory Board and employees is $33,825. If this amount should be deducted from the approximately $45,000 annual commissions payable to the trustees under the terms of the will, the trustees, corporate and individual combined, would then receive approximately $11,175 for carrying out the duties as prescribed by the will and the additional duties and responsiblities imposed upon the trustees by the judgment of the court—far less than the amount Mrs. Reynolds provided they should receive. The judgment of the court does not relieve the trustees of their ultimate responsibility for the proper administration of the hospital trust, and the trustees should not be expected to accept the drastic reduction proposed by the Attorney General. The trial court specifically so found in Paragraph III in the judgment:

"The Trustees shall not be required to exercise discretion in the application of trust income unless they are reimbursed for the reasonable cost of employing assistance, compensating members of an Advisory Board, and meeting other reasonable expenses in administering

the Hospital Trust in accordance with the provisions of this judgment."

The court further found that the trust income could best be applied to meet the purposes desired by Mrs. Reynolds through the advice of this Advisory Board assisted by a full-time experienced director, and that without such assistance the trust will be lacking in adequate direction. Additional expense was properly authorized to provide this direction. *Lumber Co. v. Pollock,* 139 N.C. 174, 51 S.E. 855; *Kelly v. Odum,* 139 N.C. 278, 51 S.E. 953.

G.S. 28-170, after providing for commissions allowable to trustees, provides that reasonable sums may be allowed for necessary charges and disbursements incurred in the management of the estate. Under this statute, if additional expenses are incurred in the administration of the estate which are for (1) services to the estate, (2) are reasonably necessary, and (3) not excessive, they are proper charges. *Lightner v. Boone, supra; Kelly v. Odum, supra.* Although generally a trustee cannot properly delegate to another duties he ought reasonably be expected to personally perform, he may properly delegate authority to do particular acts and consult with and take advice from others, provided he makes the final decision in the matter. *Belding v. Archer,* 131 N.C. 287, 42 S.E. 800; II Scott §§ 171 and 171.2. Under the judgment in this case, final responsibility rests upon the trustees. *See* Restatement (Second), Trusts § 171 (1959).

[3] Where special skills are required a trustee is entitled to purchase such skills at the expense of the trust estate. II Scott § 171.2; III Scott § 188.3. Certainly, the trustees in this case are not expected to be skilled hospital administrators, physicians, or medical care experts. The trustees, therefore, should be allowed to purchase such skills in these and other related fields at the expense of the trust in order to accomplish the trust purpose. *See* Restatement (Second), Trusts § 198 (1959); 90 C.J.S. Trusts § 270 (1955).

In the case of *In re Trusts Created by Butler,* 223 Minn. 196, 26 N.W. 2d 204 (1947), the Court stated:

"Whether the trustee is reasonably justified in retaining the services of an expert at the expense of the estate must be judged according to the test of reasonableness in

the light of the peculiar circumstances of each case. The leading case is that of *Hagedorn v. Arens,* 106 N.J. Eq. 377, 383, 384, 150 A. 4, 8, wherein the court, in determining that the trustee was justified in employing expert accountants for certain purposes by reason of the complicated situation involved, correctly stated the law as follows:

" 'It is true that under ordinary circumstances the commissions allowed to a trustee or other accountant are intended to cover the work and expense of keeping his books and preparing his account, and that payments made by the trustee to bookkeepers, accountants or lawyers for performing these services which the trustee is supposed to perform for himself, cannot be allowed as items of discharge in his account. * * * "if he [the fiduciary] chooses to employ others to do his work he must pay them himself."

" 'What, however, is the fiduciary's work? Certainly work which is *beyond the ordinary or reasonably to be expected skill and ability of such a fiduciary,* cannot be be deemed his work, and he will be entitled to obtain the skilled services of experts where necessary or advisable, and to have their compensation paid out of the estate; and indeed would probably be censurable, and perhaps personally liable, if he failed to do so.' "

*Accord, Parkinson v. Murdock,* 183 Kan. 706, 332 P. 2d 273 (1958); *In re Sellers' Estate,* 31 Del. Ch. 158, 67 A. 2d 860 (1949); *Ewing Ind. Exs. v. Wm. L. Foley, Inc.,* 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627 (1926), *reh. den.* 1926; 54 Am. Jur. Trusts § 360 (1945).

We hold that the trial court correctly allowed the trustees to employ skilled assistance in the administration of the trust created by Mrs. Reynolds, and to charge the reasonable cost for such assistance to trust income.

The judgment of the Superior Court is affirmed.

Affirmed.